459 A.2d 801

**James M. FANDRAY, Appellant**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1982.

Filed April 15, 1983.

Allen T. Lane, Pittsburgh, for appellant.

Gerard J.A. Cipriani, Pittsburgh, for appellee.

Before HESTER, BECK and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant was injured in an automobile accident and filed a claim for certain No-Fault Motor Vehicle Insurance benefits with appellee-insurer (Nationwide). The specific claim here at issue which was rejected by the insurer, is for replacement services loss. Appellant pressed his claim and won an award before a Board of Arbitrators in the amount of $85 for replacement services and $525 for counsel fees based on appellant's need to bring suit to enforce his claim. Nationwide took an appeal to the Court of Common Pleas. After the presentation of the evidence, the court directed a verdict in favor of Nationwide. Appellant's motion for a new trial was denied and this appeal was taken.

Appellant lists five issues in his brief but as he implicitly acknowledges by consolidating the issues into one argument, there is only one issue for us to address. Appellant's complaint lies in the lower court's direction of a verdict for defendant based on the court's determination that the damages claimed were not within the intended scope of replacement services loss.

We turn to the definitional section of the No-fault Act, 40 P.S. § 1009.103.

Loss means accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement service loss, and survivor's loss.

Replacement service loss is defined as:

Replacement services loss' means expenses reasonably incurred in obtaining ordinary and necessary services in

lieu of those the victim would have performed, not for income, but for the benefit of himself or his family, if he had not been injured.

Further, under the insurance policy there is a similar provision which reads as follows:

REPLACEMENT SERVICES EXPENSES   We will pay reasonable expenses incurred for hiring ordinary and necessary services an insured would have performed—but not for income—for himself and his family had he not been injured.   Such expenses must be incurred during the insured's lifetime.   In connection with any one accident, we will pay this benefit up to a maximum of $25 per day for a maximum of one year.

Here appellant's claim is for reimbursement of monies expended to install an A-frame bushing on his car ($35.00); and install a garage door opener ($50.00).[1]   Further explanation is required.   Appellant and wife maintained two automobiles, neither was involved in the accident at hand. One of the automobiles allegedly required the replacement of a bushing in order to comply with the state inspection requirements.   Appellant contended that but for his injuries, he would have undertaken the bushing replacement himself, instead he was unable to do it and required another to perform the repairs.   On a similar note is the claim for the installment cost of the garage door opener.   The device was purchased prior to the accident with the intention that appellant would install it himself.   Due to his injuries he was incapable of performing the installation and had to rely on the paid for assistance of others.

Appellant argues that as a matter of law the trial judge erred in withdrawing from the jurors' consideration the question whether such expenses come within the definition supplied by § 103.

On a motion for a directed verdict the court should accept as true all facts and proper inferences which support the contention of the party against whom the motion has been

1.   Under § 1009.202(c) the daily required maximum payment is $25.; appellant's policy provided for higher coverage.

made and must reject all testimony and inferences to the contrary. *Correll v. Werner,* 293 Pa.Superior Ct. 88, 437 A.2d 1004 (1981); *Stephens v. Carrara,* 265 Pa.Superior Ct. 102, 401 A.2d 821 (1979); *Hogan v. Bryn Mawr Hospital,* 250 Pa.Superior Ct. 109, 378 A.2d 477 (1977). Here the trial court, in essence found that as a matter of law, the expenses of the bushing replacement and garage door opener installation were not "replacement services loss." The trial court reasoned that as appellant had never before installed a garage door opener and had only replaced a bushing on a vehicle once before, years earlier, the expenses were not "ordinary and necessary" within the Act.

Like many of the cases that our appellate courts have faced concerning No-fault, the current controversy is a case of first impression in Pennsylvania. While the legislature has defined "replacement service loss", such definition does not contain a list of examples to assist parties and the courts in applying it. We look to other jurisdictions as well as the dictionary for assistance. We find that the services claimed here could possibly come within the scope of "replacement services loss."

For the purpose of this appeal the following phrases require defining: "reasonably incurred" and "ordinary and necessary services." Even though the parties have stipulated that the claimed expenses were "reasonably incurred, we find it beneficial for the resolution of this controversy to expound upon such phrase. The "replacement services loss" provision must be construed as a whole and not as separate clauses.

Webster's New Collegiate Dictionary (1980 Ed.) defines reasonable as "agreeable to reason;" "not extreme or excessive", "having the faculty of reason"; "possessing sound judgment." *Jamison v. Utah Home Fire Ins. Co.* Utah, 559 P.2d 958, 961 (1977) defined "reasonably incurred", within the context of No-fault; by asking whether it was reasonable that a family would *hire* someone else to perform the tasks. The emphasis must be placed on whether a person exercising sound judgment would have paid another to perform the chore.

Webster's defines "ordinary" as "a kind to be expected in the normal order of events"; of common quality, rank, or ability." Black's Law Dictionary, 4th Ed.Rev. defines "ordinary" as "regular; usual; normal; common; often recurring; according to established order; settled; customary; reasonable; not characterized by peculiar or unusual circumstances; belonging to, exercised by, or characteristic of the normal or average individual." (Citations omitted) See also, *Zulich v. Bowman,* 42 Pa. (6 Wright) 83, 87 (1862). "Necessary" is defined by Webster's as: "of an inevitable nature;" logically unavoidable"; absolutely needed"; required." Black's points out that in defining necessary, one must consider the connection in which it is used. Necessary "may mean something which in the accomplishment of a given object cannot be dispensed with." We find that the meaning of "ordinary and necessary services" for the purpose of this appeal may be expressed as: those services which must be performed for a particular household to continue its normal operation.

We have little difficulty in finding that both expenses were "reasonably incurred." In *Jamison,* supra, a twelve year old, who was incapacitated as the result of an automobile accident, had been responsible for taking out the garbage, washing dishes, vacuuming, carrying in groceries and washing the car. The remainder of the household consisted of his parents and two older siblings. The court felt that *under such circumstances* it was unlikely that the family would pay others to do the above chores.[2] In contrast, automotive repairs and the installation of the door opener were expenses one would normally expect a person to pay others to perform. In *Adkins v. Auto Owners Ins. Co.,* 105 Mich.App. 431, 306 N.W.2d 312 (1980), the court, without extensive discussion, approved an award for trash disposal,

---

2. There was no evidence presented that the plaintiffs did actually incur such expenditure. It can be inferred that the word "incurred" requires an actual expenditure or liability for service. See, *Habecker v. Nationwide Insurance Company,* 299 Pa.Superior Ct. 463, 445 A.2d 1222 (1982 and *Adkins v. Auto Owners Ins. Co.,* supra.

stove repairs, *car maintenance*, babysitting, plumbing repairs, and woodcutting (specific bills were provided). In The Pennsylvania No-Fault Motor Vehicle Insurance Act (Shager ed.) § 1:11.5, several examples are given for "replacement services loss"; domestics, gardeners and *repair persons*. In *Habecker*, supra, housekeeping expenses were "reasonably incurred."

■ We find that labor for automotive repairs whether for state inspection purposes or normal maintenance is ordinary and necessary.[3] Any argument that a certain repair is not "ordinary" overlooks the more general notion of repairs. If a person regularly repairs *whatever* ails his vehicle, he or she should not be denied reimbursement because a certain part does not wear out frequently. We would hope, few if any parts would require frequent replacement.

However, as to the garage door opener, a definitive answer is elusive. While a person "handy around the house", see *Adkins*, supra, may be able, as the lower court found, to install a garage door opener, we believe that the determination as to whether or not the installing of a garage door opener is "ordinary and necessary" cannot be declared as a matter of law but is rather a question of fact; in this case for the jury. While such installation *could* be within the normal order of things for a person who routinely does electrical or remodeling work around the house; we cannot determine whether such was "necessary" to the continued normal functioning of appellant's household. We believe that is a question to be decided by the fact finder. Evidence was presented that appellant was unable to open the garage door, as it exists, from the inside. He could open it from the outside. There was testimony to the effect that appellant owned two cars, but only one car could be kept in the garage. Therefore, we find that the trial court erred in directing a verdict; the jury should have been

3. The lower court placed weight upon appellant's indefinite testimony regarding the need of repair to meet inspection requirements; we find it irrelevant whether repair is for inspection purposes or otherwise required.

permitted to determine whether it was "ordinary & necessary."

■ Our disagreement with the lower court results from the different perspectives we have assumed. The lower court believed that "replacement services" required an objective view of what services are "ordinary and necessary"; and referred to the traditionally accepted self-services: domestic help, child care, lawn care, snow removal and so forth. We disagree; the focus should be on those "ordinary and necessary services ... *the victim would have performed.*" In other words, the expenses should depend on a particular victim and not a hypothetical victim. Such was our holding in *Habecker,* 299 Pa.Superior 470, 445 A.2d at 1225. There, in reference to "replacement services loss", this court was required to construe the time period for receiving reimbursement: an aggregate period of one year. This court found the period was 365 days on which such services were actually required, and not a period of 365 *consecutive* days. Such interpretation is consistent with one of the legislature's concerns in enacting the Act, 40 P.S. § 1009.102(a)(3):

> (3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce.

We must conclude that whether the services here under review were reasonably incurred, were ordinary and necessary and could have and would have been performed by the victim were factual determinations which unless stipulated to should have been submitted to the jury for resolution. Therefore, the directed verdict in this respect was improper. However, as to attorney's fees, we affirm the action of the court below.

■ Section 107(3) of the Act, 40 P.S. § 1009.107(3) provides:

If, in any action, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

Therefore we must decide whether Nationwide had a reasonable foundation for denying such claim. We find that it did. At issue was a particular provision of the Act which had not been previously addressed in the light in which it arose in this case. The insured wished to construe it liberally. The insurer preferred a more restricted construction. Nationwide consulted in-house-counsel who in turn requested and received the Insurance Commissioner's interpretation. While that interpretation is not binding upon this court and in fact is contrary to our analysis, it does demonstrate that Nationwide had a reasonable basis for denying the claim. Therefore, an award of attorney fees would not be proper. See *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 180, 425 A.2d 419 (1981); and *Platts v. Government Employees Insurance Co.*, 301 Pa.Superior Ct. 379, 384, 447 A.2d 1017, 1019 (1982).

Order affirmed in part and reversed in part. Case is remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.