**Gary HOPER, individually and Gary Hoper as Parent and Guardian Ad Litem for Marla J. Hoper, Respondent,**

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Appellant.**

**No. C6–84–576.**

Court of Appeals of Minnesota.

Dec. 18, 1984.

Harold G. Myhre, Myhre, Drenckhahn & Williams, Warren, for respondent.

Robert J. Schmitz, Dickel, Johannson, Wall, Taylor, Rust & Schmitz, Crookston, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by a no-fault insurer from a judgment against it for survivor's economic loss benefits and survivor's replacement services loss claimed to be due under the No-Fault Act. Appellant Mutual Service contends that the death of Bonita Hoper, a full-time housekeeper, did not cause the economic loss awarded, nor require replacement services except for the actual hiring of a housekeeper for one year. We reverse.

## FACTS

Bonita Hoper died in an automobile accident on May 1, 1977. She was survived by her husband Gary and daughter Marla (two other children died in the accident).

The Hopers were married in 1966, and jointly operated a family farm. Bonita Hoper did not work outside the home, but, rather, was a full-time homemaker and helped on the farm in various jobs. She tended a garden, and was "on-call" by means of a 2-way radio to help on the farm with various errands. At the time of trial, the farm operation covered about 2,200 acres. The farm generated adjusted gross incomes of approximately $17,000 in 1974, $48,000 in 1975, and $51,000 in 1976.

Following the death of his wife, Gary Hoper hired a retired widow, Beatrice Byer, to perform housekeeping services. She was paid $150.00 per month, plus room and board, and remained for one year, or until Hoper remarried, in June, 1978. Mutual Service paid survivor's replacement services benefits totaling $1,929, which is approximately the total wages paid to Mrs. Byer.

Following the accident, Hoper required extra help getting his fields planted. His father, who worked part-time for him in years past, worked more hours. Wage records for 1977 showed only a $450 increase in wages to the father over the previous year. Hoper testified, however, that his father worked many hours without pay. Total farm wages did not show a significant increase in 1977, but rose $1,200 in 1978.

Gary Hoper and his present wife, Doris, have the same arrangements regarding the farm and household. They have a joint bank account into which income from the farm is deposited. They share in management decisions, but Doris works primarily in the household, while assuming the same "on call" availability for farmwork as Bonita. In general, the farm has been run in the same manner as before the accident, with Doris assuming the role previously filled by Bonita.

Hoper did not testify to any decline in profitability attributable to the loss of his wife rather than to economic conditions.

Doris Hoper assumes responsibility for care and management of the household, including the care of Marla. Gary Hoper has not had to hire any housekeeping services to supplement the work of his wife. There was no pre-marital agreement between Doris and Gary.

Hoper presented expert testimony from Warren Green, a vocational rehabilitation specialist, as to the cost of hiring a full-time housekeeper, the replacement services component, and the cost of raising a child, one-half of which was claimed as the economic loss.

Mutual Service offered testimony from an economist, Dr. Knighton, estimating the personal consumption saved due to the death of Bonita Hoper.

The trial court awarded replacement services benefits beginning at $102.50 per week, less a figure for consumption saved. Total replacement services awarded was $18,238.69, credit being given for the sum actually paid out by Mutual Service. The court awarded economic loss benefits beginning at $37.50 per week. Judgment was awarded for benefits due up to the time of trial, and weekly payments were ordered due thereafter.

## ISSUES

1. Are the Hopers entitled to reimbursement for replacement services following Bonita Hoper's death?

2. Are the Hopers entitled to survivor's economic loss benefits?

## ANALYSIS

### 1. Replacement Services

■ The issue raised by the Hopers' claim for replacement services is whether expenses reimbursable under the statute must be actually incurred, as were the wages paid to Mrs. Byer, or whether they may be inferred, as the services performed by Doris Hoper, from the absence of a legal obligation.

The statute reads as follows:

Subd. 7. *Survivor's replacement services loss.* Survivors replacement service loss benefits shall reimburse expenses reasonably incurred by surviving dependents after the date of the decedent's death in obtaining ordinary and necessary services in lieu of those the deceased would have performed for their benefit had he not suffered the injury causing death, minus expenses of the survivors avoided by reason of the decedent's death. These benefits shall be subject to a maximum of $200 per week.

Minn.Stat. § 65B.44, subd. 7 (1982).

The Supreme Court, in *Nadeau v. Austin Mut. Ins. Co.,* 350 N.W.2d 368 (Minn. 1984), has held that replacement services obtained in lieu of those normally provided by a nonfatally injured person are not reimbursable if provided by a family member.

The court relied on the language of the statute requiring "expenses * * * incurred," Minn.Stat. § 65B.44, subd. 5 (1982), interpreting this phrase to require "an actual expenditure or liability for services rendered." 350 N.W.2d at 373. The court also noted that the statute was based on the Uniform Motor Vehicle Accident Reparations Act, which is interpreted as requiring actual expenses or liabilities. 14 Unif.Laws Annot. 48, 50 (1980).

*Nadeau* involves a different, but closely related, provision of the No-Fault Act. Minn.Stat. § 65B.44, subd. 5 (1982). Both provisions use the phrase "expenses reasonably incurred" to define liability. The insured's argument in *Nadeau* was that

* * * [the insureds] should recover the benefits because they would have recovered them if they had hired someone to provide the same services provided by [the family member].

350 N.W.2d at 372.

The Hopers concede that there have been no expenditures for the replacement care of Marla since the one-year employment of Mrs. Byer, for which Mutual Service has reimbursed them. They claim, however, that the one-half marital interest in the farm is the "payment" being made to Doris Hoper to provide the services to Marla which she is not legally obligated to provide (there was no adoption proceeding). Other than the legal obligation, it is conceded, there is no difference between the household services provided by Doris and those formerly provided by Bonita Hoper.

We do not distinguish between services provided by an existing family member, as in *Nadeau,* and those provided by a new wife who acquires new marital rights in the family.

The language of the statute requiring "expenses reasonably incurred," is against the Hopers' interpretation. Courts in other jurisdictions have interpreted this phrase as referring only to money actually expended. *See, Adkins v. Auto Owners Ins. Co.,* 105 Mich.App. 431, 306 N.W.2d 312 (1981);

*France v. Kentucky Farm Bureau Mut. Ins.*, 605 S.W.2d 773 (Ky.App.1980).

The Minnesota No-Fault provision for survivor's replacement services is based on the Uniform Act (UMVARA), which also limits recovery to "expenses reasonably incurred." 14 Unif.Laws Annot. § 1(5)(v). Although the comment to UMVARA does not fully elaborate, it does indicate that recovery is limited to substitute services actually "hired." *Id.* at 55.

### 2. Survivors economic loss benefits

■ The trial court awarded survivor's economic loss benefits of $40,689, based on a valuation of the mother's contribution at $1,947 per year. There was no evidence that this contribution was in the form of money.

The statute provides as follows:

"*Subd. 6 Survivors economic loss benefits.* Survivors economic loss benefits * * * shall cover loss accruing after decedent's death of contributions of money or tangible things of economic value, *not including services*, that his surviving dependents would have received for their support during their dependency from the decedent had he not suffered the injury causing death."

Minn.Stat. § 65B.44, subd. 6 (1982) (emphasis added).

It is unclear whether the trial court granted recovery for the loss of Bonita Hoper's household services, or for her contribution to the farm income. Services, however, are expressly excluded from reimbursable losses. Moreover, farm income was not shown to have suffered permanent damage from the death of Marla's mother. While her labor was reflected in farm income while she lived, there was no showing of a loss of "contributions of money or tangible things of economic value" due to her death. Minn.Stat. § 65B.44, subd. 6.

■ "Tangible things of economic value" is not limited to wages, but may extend to insurance benefits, disability coverage, and pensions, as well as other items. *Daniels v. State Farm Mut. Auto. Ins. Co.*, 283 Pa.Super. 336, 423 A.2d 1284 (1980). We believe that similarly includable items may be furnished by a "farmwife" such as Bonita Hoper, including vegetable garden produce, proceeds of a household business, such as crafts or day care, and labor furnished to the farm business. The Hopers, however, did not attempt any valuation of such items, relying instead on the theory that Marla Hoper has lost her mother's one-half share of the farm income. But, although a theoretical loss has occurred, in that Doris Hoper is not legally obligated for Marla's support, it is not a tangible loss, as required by the statute, at least in the absence of evidence that Marla's actual support has diminished, or that Gary Hoper's share of the farm income is not sufficient for her support.

### DECISION

The Hopers are not entitled to replacement services benefits for services performed by a new wife and stepmother for which the survivors incurred no expenses. Nor have they shown a loss of contributions of money or other tangible things of economic value due to the death of Bonita Hoper.

Reversed.