**Dolores A. MOTSCHENBACHER, Appellant,**

v.

**NEW HAMPSHIRE INSURANCE GROUP, Respondent.**

No. C4-86-1102.

Court of Appeals of Minnesota.

March 10, 1987.

Review Denied April 29, 1987.

Michael J. Healey, Jodell M. Galman, St. Paul, for appellant.

Thomas A. Pearson, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a judgment and an order denying a motion for a new trial or

judgment notwithstanding the verdict. Appellant Dolores A. Motschenbacher sued respondent New Hampshire Insurance Company to recover benefits under the Minnesota No-Fault Automobile Insurance Act following the death of her husband.

On appeal, appellant challenges the adequacy of the trial court's award of interest on overdue benefit payments under Minn. Stat. § 65B.54, subd. 2 (1984). Respondent has filed a notice of review, contesting the verdict and the interest awarded by the trial court. We affirm in part, reverse in part and remand.

## FACTS

Respondent issued a policy of insurance listing the Motschenbachers as the named insureds, doing business as the Rainbow Club. The policy also named DMN, Inc. as an insured, a corporation wholly owned by Delyle Motschenbacher, appellant's husband. The policy provided coverage for eight vehicles, resulting in stacked liability limits of $200,000.

On May 4, 1978, Delyle Motschenbacher was killed in a one-car accident. Appellant claimed survivors economic loss benefits under Minn.Stat. § 65B.44, subd. 6 (1976) and survivors replacement services loss benefits under Minn.Stat. § 65B.44, subd. 7 (1976). After receiving only partial funeral expenses from respondent, appellant commenced this action.

At trial, appellant testified that she and her husband had been married for 22 years. Four years after their marriage, decedent purchased the Rainbow Inn. During the next 19 years, the business grew significantly. At the time of his death, Delyle Motschenbacher owned all of the stock in DMN, Inc., which in turn owned the real estate and operated the Rainbow Inn and Restaurant. An off-sale liquor store was built on the property in the 1970's and was operated by the Motschenbachers as a partnership.

The Motschenbachers never drew salaries from either the corporation or the partnership. The liquor store provided average annual profits of $20,000. Following De-

lyle Motschenbacher's death, those profits decreased substantially. Appellant testified that the inn/restaurant provided her with three meals a day, the use of an apartment and utilities, and the use of a new vehicle every three years.

Testimony at trial established that decedent ran the inn/restaurant and the liquor store almost single-handedly. Following her husband's death, appellant hired additional help to assist her in operating the businesses. In July 1980, she sold the inn/restaurant because she had difficulty managing it alone. In 1982 due to substantial losses following her husband's death, she also sold the liquor store.

On May 9, 1986, the jury returned a special verdict awarding appellant $186,241 in survivors economic loss benefits and $35,066 in survivors replacement services loss benefits, for a total award of $221,307. Interest on overdue benefit payments was awarded commencing March 1, 1985 pursuant to Minn.Stat. § 65B.54, subds. 1 and 2 (1984). Post-verdict and post-judgment interest were allowed by the trial court under Minn.Stat. §§ 65B.54 and 549.09, subds. 1(a) and 2 (1984). This appeal followed.

## ISSUES

1. Is the verdict justified by the evidence and not contrary to law?

2. Did the trial court err in awarding interest on overdue benefit payments commencing March 10, 1985?

3. Does receipt of prejudgment interest on overdue payments under Minn.Stat. § 65B.54 preclude additional prejudgment interest under Minn.Stat. § 549.09?

4. Did the trial court err in awarding interest under Minn.Stat. § 65B.54 following entry of judgment?

## ANALYSIS

### I

On appeal from an order denying a motion for judgment notwithstanding the verdict or for a new trial, a reviewing court must view the evidence in a light most

favorable to the verdict and must draw every reasonable inference in support of the verdict. *Webster v. St. Paul City Railway Co.*, 241 Minn. 515, 517, 64 N.W.2d 82, 84 (1954). The verdict must be sustained if it is possible to do so on any reasonable theory of the evidence. *Siemers v. United Benefit Life Insurance Co.*, 246 Minn. 459, 461, 75 N.W.2d 605, 607 (1956).

In the event of death arising out of the maintenance or use of a motor vehicle, the No-Fault Act provides for the payment of the following benefits to surviving dependents: (1) survivors replacement services loss benefits, which compensate for loss of a decedent's personal services, and (2) survivors economic loss benefits, which compensate for loss of support formerly provided by a decedent. *See* Minn.Stat. § 65B.44, subds. 7 and 6 (1976).

*Survivors replacement services loss benefits*

Respondent challenges the award of $35,066 in survivors replacement services loss benefits, which appears to represent the wages paid to a particular employee in 1978 ($7,631), 1979 ($15,705), and 1980 ($9,959) for his or her work at the inn/restaurant until it was sold, and the amounts paid to a trucking company in 1981 ($561) and 1982 ($1,210) in connection with the operation of the liquor store.

The statute governing these benefits provides in pertinent part:

> Survivors replacement services loss benefits shall reimburse expenses reasonably incurred by surviving dependents after the date of the decedent's death in obtaining *ordinary and necessary services* in lieu of those the deceased would have performed for their benefit had he not suffered the injury causing death * * *.

Minn.Stat. § 65B.44, subd. 7 (1976).

Respondent argues that the services for which appellant has been reimbursed are not "ordinary" within the meaning of the statute because they are not household services, but rather expenses incurred in obtaining substitute services for the businesses. It relies on Minn.Stat. § 65B.44, subd. 5, which limits a *nonfatally* injured person's recovery of replacement services loss benefits to reimbursement of services which the injured person "would have performed not for income but for the direct benefit of himself or his household * * *." Minn.Stat. § 65B.44, subd. 5 (1976). This limiting language, however, is conspicuously absent from subdivision 7, which governs survivors replacement services loss benefits. The trial court rejected this analogy, reasoning that "the absence of the confining 'household' language of Subd. [7], and the different nature of the loss sustained upon death easily justified the jury's verdict." We agree.

Ordinary and necessary services are not limited to routine household services and may extend to services which the insured might normally be expected to perform as reflected in his or her prior history and usual practice in such matters. 1 I. Schermer, *Automobile Liability Insurance* § 3.04[1] (2d Ed.1985 Revision) (citing *Fandray v. Nationwide Mutual Insurance Co.*, 313 Pa.Super. 186, 459 A.2d 801, 804–05 (1983)). The evidence here shows that the services provided by the employee and the trucking company were necessary to appellant's support and were services ordinarily performed by decedent. The evidence also shows that actual expenses were incurred in obtaining these substitute services. *See Hoper v. Mutual Service Casualty Insurance Co.*, 359 N.W.2d 318, 320–21 (Minn.Ct.App.1984) (survivors replacement services loss benefits not recoverable for services performed by a family member who did not incur actual expense).

Respondent further challenges the award because the expenses were incurred by the businesses, which are not "surviving dependents" within the meaning of Minn.Stat. § 65B.44, subd. 6 (1976). In similar situations, the supreme court has ignored form and looked to the substance of an entity so that insurance coverage might be extended to the surviving dependents of a self-employed person. *See Roepke v. Western Na-*

tional Mutual Insurance Co., 302 N.W.2d 350, 352–53 (Minn.1981) (corporate veil pierced and coverage stacked on six vehicles owned by the corporation where the decedent was the president and sole shareholder of the named insured corporation, where the vehicles were used as family vehicles, and where neither the decedent nor members of his household owned any other vehicles). Compare Holsclaw v. Kenilworth Insurance Co., 644 S.W.2d 353 (Ky.App.1982) (court refused to disregard corporate entity to enable father, sole shareholder of the corporation at which his deceased daughter had worked, to recover survivor's benefits). Given the facts of this case, we agree with the trial court that appellant "became the owner of both entities upon her husband's death and it was indeed she * * * who incurred these expenses and she is therefore entitled to recover them under the specific language of [subd. 7]."

*Survivors economic loss benefits*

In this case, the jury awarded $186,241 in survivors economic loss benefits. This award apparently represents the jury's acceptance of evidence that from May 1978 until the date of trial in May 1986, appellant lost $12,500 a year in net income from the liquor store, money which would have been earmarked for her support. The award also represents the jury's acceptance of appellant's claim for losses of $14,400 a year from July 1980 until the date of trial, based on the value of the apartment, car, meals, and utilities previously provided by the inn/restaurant.

The statute governing survivors economic loss benefits provides in pertinent part:

Survivors economic loss benefits * * * shall cover loss accruing after decedent's death of *contributions of money or tangible things of economic value, not including services*, that his surviving dependents would have received for their support during their dependency from the decedent had he not suffered the injury causing death.

Minn.Stat. § 65B.44, subd. 6 (1976).

■ Few Minnesota cases interpret the types of losses recoverable by surviving dependents of a self-employed person. In such situations, survivors economic loss benefits are not limited to wage or salary loss, but include the "myriad of employment-related fringe benefits and other 'tangible things of economic value' available for dependents' support * * *." M. Steenson, *Minnesota No-Fault Automobile Insurance* 61–62 (1982) (quoting *Miller v. State Farm Mutual Automobile Insurance Co.*, 410 Mich. 538, 560–61, 302 N.W.2d 537, 543 (1981)).

In *Hoper*, this court stated:

"Tangible things of economic value" is not limited to wages, but may extend to insurance benefits, disability coverage, and pensions, as well as other items. *Daniels v. State Farm Mut. Auto. Ins. Co.*, 283 Pa.Super. 336, 423 A.2d 1284 (1980). We believe that similarly includable items may be furnished by a "farmwife" such as [the decedent insured], including vegetable garden produce, proceeds of a household business, such as crafts or day care, and labor furnished to the farm business.

*Hoper*, 359 N.W.2d at 321.

In a more recent case involving a claim under Minn.Stat. § 65B.44, subd. 3 (1982) for income loss benefits in a *nonfatal* accident, the supreme court held:

[T]o the extent that it can be shown that gross income produced by a self-owned business has decreased during the period of the self-employed owner's disability, and the decrease is attributable directly and solely to the owner's disability, that decrease, in the absence of any salary or wage paid, represents "other earnings from work." For this kind of economic detriment, income loss benefits are payable.

*Rindahl v. National Farmers Union Insurance Companies*, 373 N.W.2d 294, 299 (Minn.1985).

■ Although the definition of survivors economic loss benefits under Minn.Stat. § 65B.44, subd. 6 does not expressly include recovery of "other earnings from

work," recovery of lost profits from the liquor store was particularly appropriate in this case, given respondent's stipulation to the following jury instruction:

> You are instructed that you may include in your determination of contributions of economic value losses which you consider proven by the preponderance of the evidence, including loss of tangible things of economic value, loss of other earnings from work *and that may include profits.*

(Emphasis added). This instruction is the law of the case and cannot be challenged on appeal. *Jacoboski v. Prax,* 290 Minn. 218, 187 N.W.2d 125 (1971).

■ To recover lost profits from the liquor store, appellant was required to show that those losses were due to her husband's death and not to other economic factors. *Rindahl,* 373 N.W.2d at 299–300. The evidence establishes that profits from the liquor store were used to support appellant, that the liquor store was making consistent profits when decedent died, and that following his death, there was a substantial decrease in profits and gross receipts. Given these facts, the jury could reasonably conclude that the decrease in profits was caused by the death of appellant's husband and not by other economic factors.

■ However, once the liquor store was sold in 1982, appellant's entitlement to these benefits ceased because she no longer operated the business and incurred no actual loss from that operation. Due to the absence of any claim or evidence that the value of the liquor store decreased due to her husband's death and that she was forced to sell it for less, the award of $12,500 per year from the sale of the liquor store in 1982 until the date of trial in May 1986 is reversed.

■ Although respondent raises a number of challenges to the award of survivors economic loss benefits based on the value of the apartment, car, utilities, and meals formerly provided by the inn/restaurant, we find only one of these challenges persuasive. We agree that appellant's receipt of proceeds from the sale of the inn/restaurant precludes an award of benefits based on the value of these items of support. In determining the sale price of this corporation, which consisted of ongoing businesses and real estate, the value of such items would have been considered and factored in. For example, the market value of real estate includes the rental value of an apartment and utilities. *Regents of University of Minnesota v. Irwin,* 239 Minn. 42, 57 N.W.2d 625 (1953) (evidence of rental value of rooms legitimately bears on market value of property in condemnation proceeding). The use of a company car and free meals similarly would be added to the value of a business and considered when determining a fair sale price.

The No-Fault Act generally seeks to prevent such double recoveries. *See* Minn. Stat. § 65B.44, subd. 3 (disability and income loss benefits offset by income received from substitute employment); Minn. Stat. § 65B.42(5) (one of the purposes of the No-Fault Act is to avoid double recoveries by providing offsets). *But cf. Wallace v. Tri-State Insurance Co.,* 302 N.W.2d 337 (Minn.1980). The award of $14,400 per year from July 1980 until May 1986 is therefore reversed.

## II

■ A claimant is entitled to receive statutory interest on overdue payments for basic economic loss benefits "at the rate of 15 percent per annum." Minn.Stat. § 65B.54, subd. 2 (1984). Payments are overdue "if not paid within 30 days after the [insurer] receives reasonable proof of the fact and amount of loss realized * * *." Minn.Stat. § 65B.54, subd. 1 (1984). The statute clearly places the burden on a claimant to furnish the insurer with reasonable proof of loss, and such proof is received "when an insured has given reasonable notice of a possible claim of right." *Haagenson v. National Farmers Union Property & Casualty Co.,* 277 N.W.2d 648, 653 (1979) (quoted with approval by *Pederson v. All Nation Insurance Co.,* 294 N.W.2d 693, 696 (Minn.1980)).

Given the complexity of the loss in this case, the trial court properly determined that appellant did not furnish reasonable proof of a possible claim of right until February 1985 and that her benefit payments did not become overdue until March 10, 1985.

### III

Minn.Stat. § 549.09, subd. 1 provides in pertinent part:

> (b) Except as otherwise provided by contract or allowed by law, pre-verdict interest or pre-report interest on pecuniary damages shall be computed as provided in clause (c).

Minn.Stat. § 549.09, subd. 1(b) (1984). In *Burniece v. Illinois Farmers Insurance Co.,* 398 N.W.2d 542 (Minn.1987), *rev'g,* 384 N.W.2d 615 (Minn.Ct.App.1986), the supreme court held that interest on overdue basic economic loss benefits under Minn. Stat. §. 65B.54, subd. 2 is interest "otherwise * * * allowed by law," precluding an award of additional prejudgment interest under Minn.Stat. § 549.09. *Id.* at 544. The court also reasoned that such an award is precluded as a matter of policy because prejudgment interest under the two statutes serves the same compensatory purpose. *Id.*

■ The trial court in this case properly refused to grant pre-verdict interest under Minn.Stat. § 549.09, subd. 1(b) (1984) in addition to interest on overdue payments. Its allowance of post-verdict interest under Minn.Stat. § 549.09, subd. 1(a) in addition to interest on overdue payments, however, was error and is reversed. As a matter of policy, post-verdict interest serves the same purpose as interest on overdue payments.

### IV

■ We agree with respondent that appellant's cause of action for benefits under the No-Fault Act, together with interest on any overdue benefits, merges in the judgment entered by the trial court. The award of post-judgment interest is therefore limited to interest allowed by Minn.

Stat. § 549.09, subd. 2. The trial court's award of interest under Minn.Stat. § 65B.54 following entry of judgment is reversed.

### DECISION

We affirm in part, reverse in part and remand with directions to amend the judgment in accordance with this opinion.

Affirmed in part, reversed in part and remanded.