Bonnie **GRAHN**, Plaintiff–Appellant,

v.

**TRUCK INSURANCE EXCHANGE,**
Defendant–Appellee.

No. 90CA1169.

Colorado Court of Appeals,
Div. V.

Sept. 26, 1991.

As Modified on Denial of Rehearing
Oct. 31, 1991.

Certiorari Granted April 6, 1992.

John Gehlhausen, P.C., John Gehlhausen and J. Gregory McAuliffe, Lamar, for plaintiff-appellant.

Hall & Evans, Kevin E. O'Brien and Malcolm S. Mead, Denver, for defendant-appellee.

Opinion by Chief Judge STERNBERG.

The plaintiff, Bonnie Grahn, appeals the summary judgment entered in favor of the defendant, Truck Insurance Exchange, the insurer. She contends the trial court erred in ruling that she failed to provide adequate proof of her wage loss claim under the Colorado Automobile Accident Reparations Act, § 10-4-701, et seq., C.R.S. (1987 Repl.Vol. 4A) (No Fault Act). The plaintiff also asserts the court erred in dismissing her claims for attorney fees, interest, and treble damages under the statute and for bad faith breach of an insurance contract. We conclude that the proof of wage loss submitted was sufficient to raise an issue of fact. Therefore, we reverse and remand for further proceedings.

On April 14, 1987, the plaintiff was injured in an automobile accident. The car she was driving was covered by a policy issued by the insurer. Before the accident, the plaintiff assisted her husband in a custom farming operation. After the accident, however, she was unable to work, and a worker was hired to help with the farm duties.

In May 1988, the plaintiff requested payment from the insurer for wage loss benefits. As proof of loss, she submitted copies of canceled checks paid to a replacement employee whom she claimed did the work she had previously done as well as heavy labor which she had not performed. The plaintiff estimated that the replacement employee did 50% more work than she had; therefore, she requested wage loss benefits in an amount equal to one-half of his salary. In response to this request, the insurer requested copies of the plaintiff's income tax returns for the years 1986 and 1987. The plaintiff was unable to provide the tax returns at that time.

The plaintiff again requested wage loss benefits in November 1988. When the insurer did not respond, she filed this action seeking damages under the No Fault Act. In addition to the wage loss benefits, the plaintiff sought treble damages, interest, and attorney fees. She also filed claims for bad faith breach of the insurance contract and punitive damages.

The insurer filed a motion for summary judgment which the trial court partially granted, dismissing all the plaintiff's claims except the wage loss benefit claim. On that claim, it concluded there existed a question of fact. However, after the insurer received the plaintiff's tax returns, which showed the farming operation had earned substantially more in the years following the plaintiff's accident than it had in prior years, it filed a second motion for summary judgment. The trial court then dismissed the wage loss claim, finding that the plaintiff had failed to submit reasonable proof of her claim.

In its order granting partial summary judgment, the trial court acknowledged that "one of the primary purposes of the no-fault statute is to provide adequate compensation to victims of motor vehicle accidents" and that "it was the intent of the legislature that self-employed injured parties ... should be compensated for their loss of income." In granting the insurer's second motion for summary judgment, however, the court found that neither the plaintiff's submission of evidence of the

cost of a replacement worker nor her tax return provided adequate proof of loss of income under the No Fault Act. We disagree with that conclusion.

Section 10–4–708, C.R.S. (1987 Repl. Vol. 4A) requires insurers to pay benefits for loss of gross income and for expenses reasonably incurred for essential services. Before an insurer is required to pay a claim under the No Fault Act, an insured must submit "reasonable proof of the fact and amount" of compensable expenses.

As to wage loss benefits, the insured is entitled to:

"Payment of benefits equivalent to one hundred percent of the first one hundred twenty-five dollars of *loss of gross income* per week, seventy percent of the next one hundred twenty-five dollars of *loss of gross income* per week, and sixty percent of any *loss of gross income* per week in excess thereof with the total benefit under this subparagraph (1) not exceeding four hundred dollars per week from work the injured person *would have performed had he not been injured* during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks."

Section 10–4–706(1)(d)(I), C.R.S. (1987 Repl. Vol. 4A) (emphasis added).

With respect to essential services, § 10–4–706(1)(d)(I) provides that the insured is entitled to receive additional payment "for expenses not exceeding twenty-five dollars per day which are reasonably incurred for essential services in lieu of those the injured person would have performed without income during the period commencing the day after the date of the accident and not exceeding fifty-two additional weeks."

■ The insurer argues that, because the plaintiff was unsalaried, any compensation she was entitled to receive for her services to the custom farming operation is available only under the "essential services" provisions of the No Fault Act. We disagree.

■ Although the term has not previously been judicially interpreted, we construe "essential services" as referring to those tasks performed as part of the daily living routine of the insured for which she would not expect to be compensated, but which might result in expense to her. Such services would "include shopping, cooking, housework, yard care, child care, car maintenance, and transportation for the injured party." 8 J. Miller, *Colorado Personal Injury Practice* § 33.8 (1989). The plaintiff did request reimbursement under this section for household help and babysitting, and she was paid $7,912 for such "essential services" by the insurer.

■ The plaintiff's claim for "essential services" is distinguishable from her claim for "loss of gross income." The insurer contends that the plaintiff did not receive a personal income from the custom farming business because she neither received nor reported any self-employment income and because she did not list herself as a proprietor of the farming operation on her income tax returns. It further argues that evidence of payment of the expenses of a replacement employee proves only that there was a loss to the gross *business* income and does not satisfy the statutory requirement of proof of the loss of *personal* income. We are unpersuaded.

The insurer relies on *Ramirez v. Veeley*, 757 P.2d 160 (Colo.App.1988). In that case, the plaintiff submitted federal income tax returns on which he listed his net income from his business as part of his unadjusted gross income. The trial court, however, computed the plaintiff's gross income on the basis of his business' gross sales. We held this was error.

Nothing in that decision precludes the use of evidence of the cost of a replacement worker to establish proof of lost income. In the case before us, the *net* profit from the farming operation was reported as income on the joint federal income tax return of the plaintiff and her husband. Had she not been injured, the plaintiff's work would have reduced the labor expenses of the farming business which provided her income from its net profits. However, because it was forced to employ replacement labor, the net profits of the

business were reduced, thereby reducing the plaintiff's gross income.

The insurer also relies on *Bondi v. Liberty Mutual Insurance Co.*, 757 P.2d 1101 (Colo.App.1988) in arguing that only an actual loss of earnings, and not a loss of earning capacity, is compensable under the No Fault Act. In *Bondi,* this court held that a plaintiff, who was not employed at the time of the accident and who had no offers of future employment, could not claim benefits for lost wages based on her earning capacity alone. However, here, the plaintiff was employed at the time of the accident. She is seeking wage loss benefits for work done for the custom farming operation which she would have performed if she had not been injured. Thus, the issue here is not whether a loss existed, but how to determine the amount of the loss.

In *Nemer v. Anderson,* 151 Colo. 411, 378 P.2d 841 (1963), a case in which the plaintiff did not receive a salary, the supreme court recognized the use of replacement labor costs as a gauge for calculating "loss of earnings" under the probate code. The insurer contends that the phrase "loss of gross income" in the No Fault Act is narrower than the phrase "loss of earnings" in the probate code because the latter includes diminished earning capacity. Here we are dealing with loss of income and not diminished earning capacity; thus, we find no reason to distinguish the two phrases.

Moreover, the National Conference of Commissioners' interpretation of a similar provision under the Uniform Motor Vehicle Accident Reparations Act, 14 Uniform Laws Annot. § 1 (1990), defines work loss as "not only lost wages, but lost profit which is attributable to personal effort in self-employment (as distinguished from profit attributable to investment) or *the cost of hiring a substitute to perform self-employment services.*" (emphasis added) While this interpretation is not conclusive, it should be given deference by the courts. *Bondi v. Liberty Mutual Insurance Co., supra.*

Accordingly, we hold that the plaintiff's evidence of payment of expenses for a replacement worker may constitute "reasonable proof" of loss of gross income under the statute, and thus, disposition of the claim by summary judgment was error.

Summary judgment on the bad faith breach of insurance contract claim was entered "because plaintiff had not presented reasonable proof as to the loss of income benefits." The summary judgment on that claim as well as the treble damage, attorney fee and interest claim, are also reversed.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

PLANK and JONES, JJ., concur.