**Jerome C. LENZ, Respondent,**

**v.**

**DEPOSITORS INSURANCE COMPANY, a foreign corporation, Appellant.**

No. C8–96–1976.

Court of Appeals of Minnesota.

April 8, 1997.

Review Denied June 11, 1997.

---

Mark N. Jennings, Jennings, DeWan & Anderson, North Branch, for Respondent.

George C. Hottinger, Erstad & Reimer, P.A., Minneapolis, for Appellant.

Considered and decided by LANSING, P.J., PETERSON, and MANSUR *, JJ.

## OPINION

PETERSON, Judge.

In this declaratory judgment action to determine coverage under an automobile insurance policy, the district court concluded that certain automobile repair services for a vehicle owned by Jerome Lenz were compensable replacement services within the meaning of Minn.Stat. § 65B.44, subd. 5 (1996) and granted summary judgment in Lenz's favor. We affirm.

## FACTS [1]

In December 1995, respondent Jerome Lenz was involved in a motor vehicle accident while driving a vehicle owned by his wife and insured by appellant Depositors Insurance Company (Depositors). Lenz was injured in the accident, and his wife's vehicle was rendered inoperable. Lenz's wife had elected not to carry collision coverage on the vehicle.

Lenz owned a Jeep, which was not involved in the accident, but which required certain repairs before it could be operated. Lenz had the expertise to make the repairs but was unable to do so because of the injuries he had sustained in the accident. In the past, Lenz had done the mechanical work on his vehicles.

Lenz took the Jeep to a repair shop to have it repaired and submitted a claim to Depositors for the cost of the labor to repair the Jeep. Depositors denied Lenz's claim on the basis that the repair services did not constitute "replacement services" within the meaning of Minnesota's No–Fault Act.

Lenz commenced a declaratory judgment action, claiming that the repairs to the Jeep

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The parties stipulated to the facts.

were "replacement services" under the No–Fault Act and "essential services" under Depositors' policy. The district court concluded that the repair services were compensable replacement services under the No–Fault Act and granted Lenz's motion for summary judgment.[2]

## ISSUE

Is Lenz entitled to recover replacement service loss benefits for the cost of the labor necessary to repair his Jeep?

## ANALYSIS

Minn.Stat. § 65B.44, subd. 5 (1996) provides:

> Subd. 5. **Replacement service and loss.** Replacement service loss benefits shall reimburse all expenses reasonably incurred by or on behalf of the nonfatally injured person in obtaining usual and necessary substitute services in lieu of those that, had the injured person not been injured, the injured person would have performed not for income but for direct personal benefit or for the benefit of the injured person's household; if the nonfatally injured person normally, as a full time responsibility, provides care and maintenance of a home with or without children, the benefit to be provided under this subdivision shall be the reasonable value of such care and maintenance or the reasonable expenses incurred in obtaining usual and necessary substitute care and maintenance of the home, whichever is greater.[3]

Interpretation of a statute is a question of law subject to de novo review. *Schumacher v. Ihrke*, 469 N.W.2d 329, 332 (Minn.App. 1991). The object of statutory interpretation is to determine and give effect to the intent of the legislature. Minn.Stat. § 645.16

(1996). "[C]ourts must adhere to the statute's clear language, unless doing so would be inconsistent with the legislature's manifest intent." *Pathmanathan v. St. Cloud State Univ.*, 461 N.W.2d 726, 728 (Minn.App. 1990).

■ The meaning of a word used in a statute should be determined by inquiring into the sense of its employment, the connection in which it is found, and its common and approved usage. *City of St. Louis Park v. King*, 246 Minn. 422, 428–29, 75 N.W.2d 487, 492 (1956). A word must be construed in accordance with its common and approved usage unless to do so would be inconsistent with manifest legislative intent. *Welscher v. Myhre*, 231 Minn. 33, 38, 42 N.W.2d 311, 314 (1950).

■ Depositors argues that replacement services for which benefits must be paid are limited to services for the care and maintenance of a home. In making this argument, Depositors quotes a portion of the second clause in Minn.Stat. § 65B.44, subd. 5, as follows:

> [T]he benefit to be provided under this *subdivision* shall be the reasonable value * * * or the reasonable expenses incurred in obtaining usual and necessary substitute care and maintenance of the home, whichever is greater.

Depositors emphasizes the word "subdivision" and argues that because the statute refers to "this subdivision," benefits provided under any part of the subdivision are limited to services directed at the care and maintenance of the home.

Although Depositors quotes a portion of the second clause of the subdivision as if the quoted portion were a complete sentence, the language quoted does not appear in the statute as a complete sentence; it is preceded by

---

2. The court declined to determine the amount of damages owed to Lenz, reserving that issue for an arbitrator.

3. Depositors' policy closely follows the statutory language, although renaming "replacement services" as "essential services." Other states use the term "essential services" in their no-fault statutes instead of the term "replacement services." *See, e.g., Grahn v. Truck Ins. Exch.*, 827

P.2d 571, 573 (Colo.Ct.App.1991) (citing Colo. Rev.Stat. § 10–4–706(1)(d)(I) (1987)), *cert. denied*, 839 P.2d 1168 (Colo.1992). In *Grahn*, the court construed "essential services" as

> those tasks performed as part of the daily living routine of the insured for which she would not expect to be compensated, but which might result in expense to her.
> *Id.*

a phrase that states that the second clause of the subdivision applies

> if the nonfatally injured person normally, as a full time responsibility, provides care and maintenance of a home with or without children.

Depositors' argument ignores this phrase. It is undisputed that Lenz did not normally, as a full-time responsibility, provide care and maintenance of his home. Therefore, as the district court found, the second clause of Minn.Stat. § 65B.44, subd. 5, does not apply to this case.

The supreme court has suggested that the first and second clauses of the subdivision are independent of one another. In *Nadeau v. Austin Mut. Ins. Co.,* 350 N.W.2d 368 (Minn.1984), the court construed the first clause of the subdivision and held that a wife who did not provide care and maintenance of the home on a full-time basis could not recover the value of replacement services provided by her husband because she had not actually "incurred" expenses for those replacement services. *Id.* at 372–73. The court noted, however, that in contrast, the second clause of the subdivision permits an injured person who normally provides full-time care and maintenance of a home to recover replacement service loss benefits for either expenses actually incurred to obtain substitute care and maintenance of the home or the reasonable value of substitute care and maintenance. *Id.* at 373 n. 2; *see also Rindahl v. National Farmers Union Ins. Cos.,* 373 N.W.2d 294, 296–97 (Minn.1985) (denying wife benefits for replacement services under first clause of statute because she did not actually hire substitute help, but affirming award of benefits for value of replacement services under second clause of statute because wife normally provided full-time care and maintenance of the home).

▮ Accordingly, we conclude that the replacement services for which benefits must be paid under the first clause of the subdivision are not limited by the second clause to services directed at the care and maintenance of the home. The reference in the second clause of the subdivision to benefits provided under "this subdivision" simply recognizes that, when the injured person normally provides full-time care and maintenance of the home, substitute care and maintenance of the home are replacement services for which benefits are payable under the first clause of the subdivision. The second clause creates an exception to the requirement that the insured must incur an expense in obtaining substitute services in order to receive replacement service loss benefits. If an injured insured has full-time responsibility for care and maintenance of a home, but does not incur expenses in obtaining substitute care and maintenance, replacement service loss benefits are still payable for the reasonable value of substitute care and maintenance. *Cf. Motschenbacher v. New Hampshire Ins. Group,* 402 N.W.2d 119, 122 (Minn.App.1987), *review denied* (Minn. Apr. 29, 1987) (noting that language requiring "household services" was "conspicuously absent" from similar subdivision providing for survivors' replacement services loss benefits and rejecting argument that such requirement should be implied).

▮ Depositors also argues that the repairs to the Jeep were not "usual and necessary" replacement services, as required by section 65B.44, subdivision 5. The district court disagreed, citing *Motschenbacher,* where the court concluded:

> Ordinary and necessary services are not limited to routine household services and may extend to services which the insured might normally be expected to perform as reflected in his or her prior history and usual practice in such matters.

402 N.W.2d at 122.

The phrase "ordinary and necessary," referred to in *Motschenbacher,* is used in Minn.Stat. § 65B.44, subd. 7 (1996), which addresses survivors' replacement services loss benefits.[4] As the district court recog-

---

4. The statute governing survivors' replacement services provides:

> Survivors replacement services loss benefits shall reimburse expenses reasonably incurred by surviving dependents * * * in obtaining or-

> dinary and necessary services in lieu of those the deceased would have performed for their benefit had the decedent not suffered the injury causing death * * *.

Minn.Stat. § 65B.44, subd. 7.

nized, replacement services and survivors' replacement services are closely related, and the terms "ordinary" and "usual" are used and defined interchangeably. *See Glidden Rural Elec. Co-operative v. Iowa Employment Sec. Comm'n,* 236 Iowa 910, 20 N.W.2d 435, 438 (1945) (citing several definitions of "usual," which incorporate the term "ordinary," including definitions by Ballentine's and Webster's dictionaries and courts from other jurisdictions). We therefore agree with the district court's conclusion that the term "usual," as used in section 65B.44, subdivision 5, is not distinguishable from the term "ordinary," as used in section 65B.44, subdivision 7, and conclude that "usual and necessary" services include automobile repairs if the injured insured normally performed such repairs in the past.

■ Because Minnesota's No–Fault Act is modeled after the Uniform Motor Vehicle Reparations Act, cases construing the language of the Uniform Act are useful in construing the Minnesota statute.[5] *See Layne–Minnesota Co. v. Regents of the Univ.* 266 Minn. 284, 291 n. 13, 123 N.W.2d 371, 376 n. 13 (1963) (intent of drafters of uniform act becomes legislative intent upon enactment); *Larson v. Babcock & Wilcox,* 525 N.W.2d 589, 591 (Minn.App.1994) (when Minnesota statute is modeled after statute of other state, weight should be accorded other state's interpretation).

Interpretations of the uniform act support our conclusion that the repairs to Lenz's Jeep were usual and necessary replacement services. One commentator has stated:

"Ordinary and necessary" services are not limited to routine household services. They extend to any type of maintenance or repair work which the particular insured would normally be expected to perform as reflected in his prior history and usual practice in such matters.

1 Automobile Liab.Ins. (CBC) § 3.04[1] (Oct. 1984).

Our conclusion is further supported by *Fandray v. Nationwide Mut. Ins. Co.,* 313 Pa.Super. 186, 459 A.2d 801 (1983), where the court concluded that the replacement of an automobile bushing in order to comply with state inspection requirements was an "ordinary and necessary" replacement service that the injured insured would have performed, but for his injury. *Id.* at 803–04. The *Fandray* court stated that the focus should be on the ordinary and necessary services that "the victim would have performed"; i.e., "the expenses should depend on a particular victim and not a hypothetical victim." *Id.* at 805.[6]

There is no dispute that Lenz had done the mechanical work on his vehicles in the past, that he had the expertise to perform the Jeep repairs, or that he was unable to perform the repairs because of the injuries he sustained in the accident. It is also undisputed that the work on the jeep was for Lenz's direct personal benefit or the benefit of his household because the Lenzes intended to use the jeep for their personal transportation. Under these facts, the district court properly concluded that the repair services were compensable replacement services under Minn.Stat. § 65B.44, subd. 5.

### DECISION

The repairs to Lenz's Jeep were compensable replacement services under Minn.Stat. § 65B.44, subd. 5.

**Affirmed.**

---

5. The supreme court has stated that the first clause in Minnesota's replacement services loss statute is essentially taken from the Uniform Act. *Nadeau,* 350 N.W.2d at 373. We note that the Uniform Act uses the phrase "ordinary and necessary." Unif.Motor Vehicle Reparations Act § 1(a)(5)(iii), 14 U.L.A. 43 (1990).

6. *Grahn,* 827 P.2d at 573 (construing "essential services" as including "shopping, cooking, housework, yard care, child care, car maintenance, and transportation for the injured party"); Cf. *Adkins v. Auto Owners Ins. Co.,* 105 Mich. App. 431, 306 N.W.2d 312, 313 (1981) (affirming award of survivors' replacement services for tasks including stove and plumbing repairs and automobile maintenance).