**Doris LYLES, Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, CIGNA Property and Casualty Companies, Appellant. (Two Cases).**

Superior Court of Pennsylvania.

Submitted March 22, 1999.
Filed May 20, 1999.

Patrick J. Healey, Philadelphia, for appellants.

Laura A. Feldman, Philadelphia, for appellee.

Before McEWEN, President Judge, DEL SOLE and BECK, JJ.

BECK, J.:

¶ 1 In 1979, plaintiff-appellee Doris Lyles was injured in an automobile accident and rendered quadriplegic. She receives benefits under the Pennsylvania No–Fault Motor Vehicle Act, 40 P.S. § 1009.101 *et seq.* (repealed). These benefits are paid for by Insurance Company of North America (INA), formerly CIGNA. Since 1982, Lyles has been supplied with 24 hour a day nursing care under the act.

¶ 2 Lyles received benefits for 17 years without any dispute from INA. The first instance of difficulty between the parties arose in February, 1997, when INA stopped making payments for her nursing care. Lyles continued to receive nursing care while arrearages in payment accumulated.

¶ 3 Lyles's physical condition deteriorated on July 28, 1997. At that time she was admitted to Thomas Jefferson Hospital with sepsis and pneumonia. Because of the pulmonary difficulties Lyles was suffering, the attending physician at Jefferson Hospital wrote to INA and informed them that Lyles needed 24 hour nursing care while in the hospital, and that the hospital's staff could not provide the one-to-one care she needed. Nonetheless, INA discontinued Lyles's around-the-clock nursing care, and replaced it with 12 hour, night-time coverage.

¶ 4 On August 11, 1997, Lyles filed suit for the unpaid nursing bills and sought injunctive relief to restore her 24 hour nursing care. On August 14, 1997 a hearing was held and the trial court[1] ordered INA to resume the 24 hour nursing care. INA did so, but ordered the nursing service not to prepare meals or clean soiled linens for Lyles upon her return home. These services had been performed for the past 17 years. As a result of INA's instructions to the nursing service, injunctive relief was again sought, and was granted after a hearing on October 2, 1997. While the nursing services were restored, the court did allow INA to select the nursing provider. INA changed Lyles's nursing service provider.

¶ 5 While rehabilitating at Magee Rehabilitation Hospital, Lyles's health worsened. Doctors decided to perform a colonoscopy to help them determine the cause of her problem. This procedure was scheduled to be done at Jefferson Hospital on October 13, 1997. However, Jefferson refused to admit Lyles until it received a precertification of payment from INA. INA refused to provide the precertification on the basis that they were not required to provide such assurances under the No–Fault Act. This led Lyles to seek injunctive relief yet again on October 10, 1997, and after a hearing INA was compelled to issue the precertification.

¶ 6 The next weeks brought further difficulties with Lyles's care. The newly selected nursing service personnel refused to prepare meals, despite the court order, and were missing shifts. Lyles's ambulance service was cancelled, and the lift which gets her in and out of bed was broken and had not been fixed. Accordingly, Lyles again sought injunctive relief,

---

1. Several different judges heard matters relating to this case.

and a hearing was held on October 29, 1997. In addition to the benefits she was denied, Lyles also argued for attorney's fees and statutory interest on the unpaid nursing bills. On June 30, 1998, the court ordered INA to repair the lift, restore the ambulance service, and pay the statutory interest due on the nursing bills. Further, the court ordered payment of attorney's fees and costs.

¶ 7 INA refused to pay the attorney's fees or statutory interest. On July 24, 1998, Lyles filed a motion for contempt. The court issued an order on July 29, 1998, requiring the previous payments, plus additional attorney's fees to cover Lyles's motion for contempt. This appeal followed.

¶ 8 INA presents two questions for our review. First, INA argues that the trial court committed an error of law when it determined that preparation of meals and laundering of clothing and linens were allowable expenses under the No–Fault Act. We disagree.

¶ 9 When the words of a statute are clear and unambiguous the courts may not disturb the plain meaning of the statutory language. *Philadelphia Housing Auth. v. Com. of Pa. Labor Relations Board*, 508 Pa. 576, 499 A.2d 294 (1985); 1 Pa.C.S.A. § 1921(b). Every statute must be construed to give effect to its provisions. 1 Pa.C.S.A. § 1921(a). The No–Fault Act's definition of "medical treatment and care" is lumped together with the definition of "medical and vocational rehabilitative services." Section 103 of the Act provides, in pertinent part:

> "Medical and vocational rehabilitation services" means services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the

supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services.

40 P.S. § 1009.103.

¶ 10 INA directs us to cases that hold that household services are "replacement services" as defined by § 103 of the Act, and argues that meal preparation and laundry are household services. Payment for replacement services are limited to an aggregate 365 day period. *Habecker v. Nationwide Ins. Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982). We find these cases to be factually distinguishable. In *Habecker, supra*, this court found that housekeeping was a replacement service. Likewise, in *Fandray v. Nationwide Mut. Ins. Co.*, 313 Pa.Super. 186, 459 A.2d 801 (1983), this court found that repair of an automobile was a replacement service under the statute.

¶ 11 Here, the trial court found that the ironing of Lyles's clothes was not part of her nursing care. N.T. Motion, 10/2/97, at 17. Ironing would be analogous to the type of replacement service discussed in the cases cited above, i.e., "ordinary and necessary services ... the victim would have performed ... for the benefit of [her]self or [her] family, if [s]he had not been injured." 40 P.S. § 1009.103. However, in the case of an individual who is unable to clean or feed herself, meal preparation and laundry are clearly medical services, i.e., "services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning." *Id.* The trial court found that Lyles is unable to care for herself in any way whatsoever. Trial Court Opinion, 11/12/98, at 7. She is completely dependent upon the medical care she receives. As noted by her doctor in a progress note, Lyles's nursing needs include "provid[ing] all personal care, meal prep + [sic] feeding." R.R. at 30a. Without food or clean clothes, Lyles's physical

functioning would be immediately threatened by the risk of malnutrition and infection. The No–Fault Act sought to address the risk of such harm and adopted a broad definition to encompass the wide variety of medical needs a victim might have. *See* WILLIAM C. ARCHBOLD, JR., ET. AL., THE PENNSYLVANIA NO-FAULT MOTOR VEHICLE INSURANCE ACT (David S. Shrager, ed., Pennsylvania Trial Lawyers Assoc. 1979) 74–80. Viewing the court's decision in light of Lyles's medical condition and the No–Fault Act's definition of medical services, we find no error in the trial court's conclusion that Lyles was eligible for benefits under the Act to cover meal preparation and laundering of soiled linens and clothing.

¶ 12 Finally, INA argues that the trial court abused its discretion in awarding attorney's fees to Lyles. The determination of attorney's fees under the No–Fault Act is a matter within the sound discretion of the trial court. *Danks v. Government Employees Ins. Co.*, 307 Pa.Super. 421, 453 A.2d 655 (1982). "[T]he court in exercising its discretion must evaluate the reasonableness of time spent by counsel in relation to the particular case." *Id.* at 656.

¶ 13 Here, there was an on the record discussion regarding the reasonableness of attorney's fees. N.T. Motions, 3/31/98, at 10–11. The trial court concluded that the fees were reasonable. *Id.* at 10. Furthermore, in regard to the number of hours billed by Lyles's counsel, INA's counsel stated: "I believe the hours she has expended are reasonable." *Id.* After our careful review of the briefs, the trial court opinion, and the record, we find no error.

¶ 14 Order affirmed.