Neal NADEAU and Ferol Nadeau,
Respondents,

v.

AUSTIN MUTUAL INSURANCE
COMPANY, Appellant.

No. C1–83–684.

Supreme Court of Minnesota.

June 15, 1984.

Lawrence R. King, St. Paul, for appellant.

Richard W. Johnson, Red Wing, for respondents.

SCOTT, Justice.

Defendant Austin Mutual Insurance Company (Austin) appeals from a judgment entered in Goodhue County District Court, awarding plaintiffs medical expense benefits and replacement service loss benefits under their no-fault insurance policy with defendant. On appeal, defendant contends (1) that plaintiffs are not entitled to those no-fault benefits because plaintiff Ferol Nadeau's injuries did not arise out of the use of a motor vehicle, and (2) that, if they did, plaintiffs would not be entitled to replacement service loss benefits because no expenses were actually incurred by or on behalf of Mrs. Nadeau for the substitute services rendered by Mr. Nadeau. We affirm that part of the judgment awarding plaintiffs medical expense benefits, but reverse as to the award of replacement service loss benefits.

The jury would have been warranted in finding the following facts: Sometime between 5:30 and 6:00 p.m. on March 6, 1980, Mrs. Nadeau left her house in Red Wing, Minnesota, to walk to a nearby lumber yard. Two to four inches of snow had fallen that day and the conditions were slippery. As she started to cross the street in order to walk against the traffic, she observed an automobile coming toward her

"fishtailing up the street." So, she turned and hurried back into her driveway.

That automobile, which was driven by Ron Wagar, turned into a common access road located across from the Nadeaus' driveway. Mr. Wagar's private driveway was located off that common access road. Due to the conditions, he was unable to turn into his private driveway. So, he turned the vehicle around and drove back toward the street.

While Mr. Wagar was turning his vehicle around, Mrs. Nadeau again began to cross the street. When she was about halfway across the street, she saw the automobile "fishtailing" down the common access road toward her at an excessive speed. Concerned for her safety, she again turned and hurriedly retreated to her driveway. While looking back over her shoulder, she slipped and fell in her driveway about four feet from the street. She fell just as Mr. Wagar's automobile was about to enter the street from the common access road. As a result of her fall, Mrs. Nadeau sustained a back injury.

Plaintiffs subsequently brought this action against Austin, their no-fault insurer, seeking medical expense benefits and replacement service loss benefits. The parties stipulated that Mrs. Nadeau incurred medical expenses in the amount of $4,500 and that Mr. Nadeau performed replacement services reasonably valued at $2,500. Thus, the only issues presented to the trial court concerned whether plaintiffs were entitled to those benefits. The trial court submitted to a jury the question of whether Mrs. Nadeau's injury arose out of the use of a motor vehicle. The jury found that it did, and the trial court issued an order for judgment awarding plaintiffs their medical costs. The trial court then ruled that plaintiffs were entitled to replacement service loss benefits and issued an order for judgment awarding them those benefits. Defendant appeals.

The following issues are presented:

(1) Whether Mrs. Nadeau's injury arose out of the use of a motor vehicle.

(2) Whether plaintiffs can recover replacement service loss benefits for household services performed by an injured person's spouse, where no expenses were actually incurred by or on behalf of the injured person.

■ 1. To recover basic economic loss benefits under the Minnesota No-Fault Act (Act), Mrs. Nadeau's injury must have arisen "out of the * * * use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1982).[1] For an injury to "arise out of the * * * use of a motor vehicle," there must exist a causal connection between the injury and the use of an automobile for transportation purposes. *North River Insurance Co. v. Dairyland Insurance Co.*, 346 N.W.2d 109, 114 (Minn.1984); *Galle v. Excalibur Insurance Co.*, 317 N.W.2d 368, 370 (Minn.1982). The use of a motor vehicle need not be a proximate cause of the injury in the tort sense; it is sufficient if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *North River Insurance Co.*, 346 N.W.2d at 114; *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn. 1981). The vehicle must be an "active accessory" to the injury sustained. *Tlougan*, 310 N.W.2d at 117.

On appeal, defendant Austin contends that Mrs. Nadeau's injury did not arise out of the use of Wagar's automobile. Conceding that Wagar's approaching vehicle caused Mrs. Nadeau to return to her driveway, Austin nevertheless claims that her injury was caused solely by the slippery conditions of her driveway. For that rea-

---

**1.** Minn.Stat. § 65B.43, subd. 3 (1980) provides:

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include (1) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or (2) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it.

son, it concludes that Wagar's vehicle was merely incidental and, therefore, there was an insufficient connection between the injury and use of a motor vehicle.

To support its conclusion that the use of Wagar's vehicle was merely incidental, Austin cites two decisions by the Michigan Court of Appeals. *See King v. Aetna Casualty and Surety Co.*, 118 Mich.App. 648, 325 N.W.2d 528 (1982); *Block v. Citizens Insurance Co. of America*, 111 Mich.App. 106, 314 N.W.2d 536 (1981). In both of those cases, the plaintiffs slipped and fell on ice just before entering (*King*) or loading (*Block*) their parked vehicles. The Michigan Court of Appeals held in each instance that the plaintiff's injury was caused by a slip and fall on the ice, without a causal connection to the ownership, maintenance or use of a motor vehicle. *King*, 118 Mich.App. at 652, 325 N.W.2d at 530; *Block*, 111 Mich.App. at 109, 314 N.W.2d at 538.

Those cases are inapposite to the facts presented here. Wagar's vehicle was not parked; it was being driven toward Mrs. Nadeau. In this case, the Wagar vehicle could be considered an "active accessory" to Mrs. Nadeau's injury. *Cf. Tlougan*, 310 N.W.2d at 117 (cab of the motor vehicle merely the situs of the incident causing injury).

There is also no merit to defendant's claim that Mrs. Nadeau's injury was caused solely by the slippery conditions of her driveway. Although she sustained the injury by slipping and falling, she did so while retreating from the street to avoid Wagar's oncoming vehicle. Only recently, where a non-vehicle related act concurred with a vehicle related act to cause damage, this court held that the injury arose out of the use of a motor vehicle. *Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917, 920 (Minn.1983) (case involving an automobile liability policy). Applying the "but for" test, the court concluded that "each act was necessary to cause the damage" and, therefore, the loss arose out of the use of a motor vehicle. *Id.* In the instant case, Mrs. Nadeau would not have sustained her injury "but for" the fact that Mr. Wagar's vehicle was being driven toward her, causing her to retreat to her driveway. It follows that the use of Wagar's vehicle was a necessary and contributing cause of Mrs. Nadeau's injury.

Finally, defendant contends that a recovery by this plaintiff will lead to absurd results under the Act. That argument raises the question of whether we should apply limiting principles to the causal connection test in the circumstances presented here. We, too, are concerned that application of the causal connection test alone may lead to unintended and unreasonable results where, as here, an injury is causally connected to the use of a motor vehicle, though the injured person never came in contact with the motor vehicle in question. While limitations could be imposed on a case-by-case basis, we are also concerned that the lack of guidelines increases the possibility of arbitrary and capricious results.

The instant case is somewhat analogous to cases in which we applied limits on claims by persons alleging negligent infliction of emotional distress arising from witnessing an automobile accident. *See Stadler v. Cross*, 295 N.W.2d 552 (Minn.1980). Similar concerns prompted this court to limit such claims to persons who had been in some physical danger as a result of defendant's negligence. *Id.* at 553–55. We concluded that the "zone of danger rule" would lead to reasonable and consistent results because "courts and juries can objectively determine whether plaintiffs were within the zone of danger." *Id.* at 554.

Although *Stadler* involved limits on third-party liability, both the above rationale and the purposes underlying the Act promote application of a "zone of danger" test to the no-fault claim presented here. While the purposes of the Act support recovery by a person who is injured while avoiding an oncoming vehicle, they would not rationally support recovery by one who was never in danger of being struck by a motor vehicle. Accordingly, where persons allege their injuries arose out of the use of

a motor vehicle, with which they never came in contact, we hold that such persons cannot recover no-fault benefits unless they were within the danger zone of physical impact. We are convinced that such a rule will foster reasonable and consistent results under the Act.

■ Generally, in a case such as this, the finder of fact should decide whether the person was within the danger zone of physical impact. Yet, in the instant case, Mrs. Nadeau gave the only testimony concerning the key events leading to her injury. She testified that the Wagar vehicle was being driven toward her and that she "had a choice of either jumping in the snowbank over here where there is no sidewalk, getting hit by his car or hurrying back to my driveway." Then, while hurriedly attempting to avoid the Wagar vehicle, she slipped and injured her back. Based on this record, the jury would logically have found, and we must therefore conclude, that she was in danger of being struck by Wagar's vehicle had she not hurriedly retreated from the street. Accordingly, we hold that Mrs. Nadeau's injury arose out of the use of a motor vehicle and that she is entitled to recover the medical expense costs under plaintiffs' no-fault policy with defendant.

2. Plaintiffs also sought replacement service loss benefits pursuant to Minn.Stat. § 65B.44, subd. 5 (1982). At the trial level, the parties agreed to the following facts: (1) "that the services were performed by the husband, plaintiff Neal Nadeau," (2) that the services "were not directly paid for by injured plaintiff Ferol Nadeau to husband Neal Nadeau," and (3) that "the amount of reimbursable services was in the amount of $2,500." The parties then requested the trial court to rule on the following issue based on those facts: "Are the plaintiffs precluded from recovering reasonable reimbursable substitute home services based solely upon the fact that the services were performed by the injured party's husband and that there was no actual payment exchange between the parties for said services?" The trial court ruled that plaintiffs were entitled to re-

placement service loss benefits, finding the "services performed by a spouse of a claimant compensable under" section 65B.44, subd. 5.

Defendant challenges that ruling on appeal. As relevant here, section 65B.44, subd. 5, provides:

Replacement service loss benefits shall reimburse all expenses reasonably incurred by or on behalf of the nonfatally injured person in obtaining usual and necessary substitute services in lieu of those that, had he not been injured, the injured person would have performed not for income but for the direct benefit of himself or his household * * *.

The instant controversy concerns that portion of the statute which provides that "benefits shall reimburse all expenses reasonably incurred * * * in obtaining * * * substitute services."

The record before us does not disclose that specific expenses were actually incurred by or on behalf of Mrs. Nadeau for the substitute services provided by Mr. Nadeau. Defendant therefore argues that plaintiffs should not recover for those services under the unambiguous language of the statute. Plaintiffs counter that the statute should not be construed to require actual expenses or liability. They contend that they should recover the benefits because they would have recovered them if they had hired someone to provide the same services provided by Mr. Nadeau.

Plaintiffs cite *Dahlin v. Kron*, 232 Minn. 312, 45 N.W.2d 833 (1950), and *Van House v. Canadian Northern Railway*, 155 Minn. 65, 192 N.W. 496 (1923), to support their contention that they should recover the reasonable value of Mr. Nadeau's services even though he never expected to be compensated by Mrs. Nadeau. Neither of those cases has a bearing on the instant case. While they may support a common law tort action against Mr. Wagar for the services rendered, the instant controversy must be resolved under the terms of the no-fault statute.

We reject plaintiffs' proposed construction for two reasons. First, the terms of a statute generally should be construed according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980). The statutory provision in question clearly reimburses only "expenses * * * incurred." According to its plain meaning, the term "incurred" requires an actual expenditure or liability for services rendered. *See Fandray v. Nationwide Mutual Insurance Co.*, 313 Pa.Super. 186, 459 A.2d 801, 804 n. 2 (1983); *Adkins v. Auto Owners Insurance Co.*, 105 Mich.App. 431, 433, 306 N.W.2d 312, 314 (1980).

Second, the provision in question is essentially taken from the Uniform Motor Vehicle Accident Reparations Act § 1(a)(5)(iii). 14 *Uniform Laws Annotated* 48, 50 (1980). The comments to that section provide:

> "Replacement services loss" is defined to exclude recovery for loss of the capacity to perform useful services, and is limited to recovery of reasonable expenses incurred, such as those in hiring a substitute to perform the services. For example, a housewife whose injury prevented her from performing services in the home could not attribute loss to the incapacity itself, but loss would be suffered if domestic help were hired to perform those services.

*Id.* at 55. The comments further provide that those benefits, as well as others, are limited to "genuine economic loss." Those comments thus support the conclusion that the terms "expenses * * * incurred" should be construed according to their plain meaning. For the above reasons, we construe the provision in question to re-

quire an actual expense or liability for substitute services rendered.[2] Accordingly, we hold that plaintiffs are not entitled to replacement service loss benefits.

Affirmed in part, reversed in part.

---

2. In contrast, Minn.Stat. § 65B.44, subd. 5, further provides:

> [I]f the nonfatally injured person normally, as a full time responsibility, provides care and maintenance of a home with or without children, the benefit to be provided under this subdivision shall be the reasonable value of such care and maintenance or the reasonable expenses incurred in obtaining usual and necessary substitute care and maintenance of the home, whichever is greater.

That provision would seemingly entitle claimants to replacement service loss benefits regardless of whether expenses have actually been incurred by or on behalf of the injured person if the injured person provides care and maintenance of a home "as a full time responsibility." That provision does not apply here because there is no indication in the record on appeal that Mrs. Nadeau provided care and maintenance of the home on a full time basis.