**Mary Lou RINDAHL, Respondent,**

v.

**NATIONAL FARMERS UNION INSURANCE COMPANIES, Appellant.**

No. C4–84–267.

Court of Appeals of Minnesota.

Aug. 14, 1984.

Robert M. Albrecht, Brink, Sobolik, Severson, Vroom & Malm, Hallock, for respondent.

Robert J. Schmitz, Dickel, Johannson, Wall, Taylor, Rust & Schmitz, Crookston, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

After suffering injuries in a car accident respondent Rindahl brought this action for work loss benefits and for replacement service loss benefits under Minnesota's No-Fault Act, Minn.Stat. § 65B.44(3) and (5) (1982 & Supp.1983). The trial court ordered judgment in Rindahl's favor. Defendant appeals from the trial court's denial of its motion for a new trial.

We affirm.

## FACTS

As a result of injuries suffered in a car accident, Rindahl was unable to continue many of her former activities. Before the accident Rindahl worked approximately 40 hours per week at an outreach program earning $3.74 per hour. She worked 7–8 hours a week on her family's cattle and grain farm, and worked 28 hours per week taking care of her household. Her husband prepared noon meals for their five children and himself. Her children also assisted with household chores. Rindahl performed all other housework.

The parties agree that Rindahl's ability to perform household services has diminished as follows:

1) During the first 44 weeks after the accident Rindahl performed 0% of her previous level of household services.

2) During the next 66 weeks Rindahl performed 75% of her previous level of household services.

3) During the balance of the time before trial Rindahl performed 50% of her previous level of household services.

Rindahl's husband and her children now do the housework she can no longer perform. Rindahl and her husband testified that they would have hired someone to do the housework and help with the children, but they could not afford it. Although she asked if she was eligible for benefits, her insurance agent did not advise her that she could be compensated for the cost of replacement services.

Rindahl can no longer do any farm chores because of her injuries. The farm work previously performed by Rindahl has been picked up by Rindahl's husband and his brother. The Rindahls did not pay the brother for his services but instead "helped him back" to compensate him.

Rindahl has been able to return to her former job and now works 40 hours per week.

## ISSUES

1. Did plaintiff have "full-time responsibility" for household services when she worked 28 hours per week in the house but also maintained a full-time position outside the house?

2. Is a self-employed plaintiff entitled to work loss benefits under the no-fault act when she did not incur any costs for replacing her services and when she continues to hold a full-time job?

## ANALYSIS

The No-Fault Act, Minn.Stat. § 65B.44, creates several classes of "basic economic loss benefits" for the victims of automobile accidents. Rindahl's claims fall under two different classifications.

### Household Services

The No-Fault Act creates a class of basic economic loss benefits called replacement service loss benefits:

Replacement service loss benefits shall reimburse all expenses reasonably incurred by or on behalf of the nonfatally injured person in obtaining usual and necessary substitute services in lieu of those that, had he not been injured, the injured person would have performed not for income but for the direct benefit of himself or his household; *if the nonfatally injured person normally, as a full time responsibility, provides care and maintenance of a home with or without children, the benefit to be provided under this subdivision shall be the reasonable value of such necessary substitute care and maintenance or the reasonable expenses incurred in obtaining usual and necessary substitute care and maintenance of the home, whichever is greater* * * * (emphasis supplied)

Minn.Stat. § 65B.44 subd. 5.

▪ Under the first clause of this section, a claimant may only recover expenses incurred for substitute services. *Nadeau v. Austin Mutual Insurance Company,* 350 N.W.2d 368 at 373 (Minn.1984). Under the second clause a claimant may recover either the reasonable value of substitute services *or* the reasonable expenses incurred for substitute services. *See id.* at 373, n. 2.

Rindahl claims benefits under the second clause of § 65B.44(5). The validity of her claim turns on the meaning of the term "full-time responsibility." The legislature did not define the term nor have any cases considered its meaning.

Defendant's arguments propose two definitions:

1. A person who devotes all of his/her productive time to household services.
2. A person who has exclusive responsibility for a home's household services.

These definitions are unrealistic and would unfairly deny benefits to people the legislature intended to protect. Under the first definition, no person who worked outside of the home could receive benefits, even if the person spent 60 hours per week doing housework. Under the second definition, no person whose spouse or child shares a small proportion of household responsibilities could receive benefits. The legislature could not have intended these results.

■ The facts show that Rindahl was primarily responsible for the housework in the Rindahl home. Although her husband helped out by feeding the children at noon, he left the noon dishes for Rindahl to do when she returned from work. Similarly, the children performed certain chores easing her burden but Rindahl remained fully responsible to make certain those tasks were performed. Under these facts Rindahl had full-time responsibility for providing care and maintenance of the home.

### Farm Work

The No-Fault Act provides benefits for loss of income. Minn.Stat. § 65B.44(3) (Supp.1983) states:

Disability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $200 per week. Loss of income in-

cludes the costs incurred by a self-employed person to hire substitute employees to perform tasks which are necessary to maintain his income, which he normally performs himself, and which he cannot perform because of his injury.

\* \* \* \* \* \*

For the purposes of this section "inability to work" means disability which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit, for which he is or may by training become reasonably qualified. If the injured person returns to his employment and is unable by reason of his injury to work continuously, compensation for lost income shall be reduced by the income received while he is actually able to work \* \* \* \*

This claim raises two questions: 1. Is Rindahl "unable to work" within the meaning of this statute? 2. May Rindahl, as a self-employed person, recover benefits even though she hired no substitute employee?

### 1. Hiring substitute employees

Defendant argues that Rindahl should not recover the value of her lost farm work because she did not spend money to hire substitute employees. Defendant claims that loss must be wages or salary loss. Rindahl argues that she should recover because she nonetheless experienced a loss of income. She claims her benefits should be based upon the number of hours she formerly worked and the normal wage for that work. Alternatively she claims her loss should be measured by the profits her family lost when their new hog operation failed allegedly as a result of her disability.

A portion of Minn.Stat. § 65B.44(3) states: "Loss of income includes the costs incurred by a self-employed person to hire substitute employees \* \* \*" This language does not exclude establishing loss of income in other ways.[1] No Minnesota cases have decided whether a self-employed

---

1. Compare *Nadeau v. Austin Mutual Ins. Co.,* 350 N.W.2d 368 (Minn.1984) where the supreme court held replacement service loss benefits un-

der the first clause of Minn.Stat. § 65B.44(5) will only be granted for expenses incurred for replacement services.

person may show lost income simply by establishing the number of hours worked and the common wage for that work. The No-Fault Act, however, defines loss of income to include: "salary, wages * * * and other earnings from work or tangible things of economic value produced through work in individually owned businesses, farms, ranches, or other work." Minn. Stat. § 65B.43(6). Requiring a self-employed person to show loss through wages for substitute employees discriminates against their means of making a living. *See* M. Steenson, *Minnesota No-Fault Automobile Insurance*, 51 (1982); J. Schwebel, *Minnesota No-Fault Update*, 20 (1979).

 We hold that Rindahl's inability to perform part-time farm work entitles her to work loss benefits even though she did not incur replacement expenses. She has suffered a legitimate loss of income under the No-Fault Act. Rindahl's estimation of the number of labor hours lost and the value of her labor provides sufficient evidence of her loss of income. *See, Dewey v. Allstate Insurance Co.*, 525 F.Supp. 857, 866 (D.Kan.1981). Since Rindahl requests affirmance of the trial court and since we find for her on her primary argument we do not reach her alternative argument for lost profits.

*2. Inability to Work*

Defendant argues that Rindahl is able to work under the statute because she is holding down a 40 hour per week job. Rindahl argues that she is no longer able to do farm work which she formerly did for income.

Minn.Stat. § 65B.44(3) provides:

For the purposes of this section "inability to work" means disability which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit, for which he is or may by training become reasonably qualified. If the injured person returns to his employment and is unable by reason of his injury to work continuously, compensation for lost income shall be reduced by the income received while he is actually able to work.

Rindahl's position is the same as that of other fully employed people who moonlight at part-time jobs, except that she is self-employed in her part-time job. That difference is of no consequence, given the definition of income in Minn.Stat. § 65B.43(6). Accordingly, Rindahl's inability to do farm work constitutes the inability to work under Minn.Stat. § 65B.44 subd. 3.

## DECISION

We affirm the trial court's decision granting respondent Rindahl work loss benefits and replacement service loss benefits under the No-Fault Act.

**Affirmed.**