**GREAT WEST CASUALTY COMPANY, Petitioner, Respondent,**

v.

**Ronald KRONING, et al., Appellants.**

**No. C7–93–1419.**

Court of Appeals of Minnesota.

Jan. 18, 1994.

Review Denied March 15, 1994.

---

Michael D. Barrett, Cousineau, McGuire & Anderson, Minneapolis, for respondent.

Daniel J. Heuel, Muir, Heuel, Carlson & Spelhaug, Rochester, for appellants.

Considered and decided by FORSBERG, P.J., and LANSING and NORTON, JJ.

## OPINION

FORSBERG, Judge.

Appellants challenge the district court's determination that nursing services rendered by Theogene Kroning to her husband are not compensable by a no-fault carrier. By notice of review, respondent challenges the district court's denial of its motion to vacate an arbitrator's award. We affirm.

## FACTS

On November 29, 1991, Ronald Kroning was driving a truck for his employer, St. Charles Transport. The roads were icy, and traffic was moving slowly. According to Ronald Kroning, a red car passed him, then suddenly cut in front of him and braked. When he braked to avoid hitting the red car, his truck skidded off the road, and as a result suffered a fractured neck. He was taken to St. Mary's Hospital in Rochester, where he stayed until December 12, 1991. During his hospitalization, he underwent three surgeries, including a multilevel fusion of his cervical spine.

Because of the spinal damage, Ronald Kroning was immobilized in a halo cast. The cast consists of a stiff plastic vest covering the wearer from the chest to the waist; four metal rods attached to the vest surround the wearer's head. A metal ring resembling a halo is attached to the metal rods, and the halo is secured by four screws in the wearer's skull. The halo cast completely immobilizes the head, preventing any movement of the head and neck. While in the halo cast, Ronald Kroning required assistance with virtually every normal activity of daily living, including changing positions in bed, sitting up, getting in or out of bed, bathing, shaving, eating and drinking, dressing and undressing, using the bathroom and taking medications. The pin sites (the spots where the screws are attached to the skull) had to be cleaned and disinfected four times a day. While in the hospital, the nursing staff performed all of these services.

Before Ronald Kroning could be discharged from the hospital, there had to be someone available to perform these services. The Kronings decided against a nursing

home placement because of their concern over how they would pay for it. Instead, Theogene Kroning received three days of training and instruction from the nursing staff and treating physician on how to perform these services. Particular attention was paid to cleaning and disinfecting the pin sites. In addition, the Kronings, at the direction of Ronald's doctor, had a hospital bed delivered to their house to make it possible for Theogene to get Ronald in and out of bed.

After Ronald's discharge from the hospital, Theogene performed all of the services the nursing staff formerly performed and also took Ronald to his medical appointments. Theogene kept a daily log, recording the amount of time she spent performing these services. Only services above and beyond her ordinary household duties were recorded in the log. Between the date of Ronald's discharge from the hospital and the removal of the halo cast, Theogene spent 404½ hours performing these services.

The Kronings submitted a claim for the value of Theogene's services to respondent Great West Casualty Company, the insurer of Ronald's truck. Great West denied the claim, asserting the services were not compensable under the no-fault act. The Kronings then demanded arbitration, and the parties agreed that the arbitrator would determine the reasonableness, necessity and value of the services. The arbitrator determined the necessary and reasonable value of the services performed by Theogene Kroning was $5,787; interest brought the total award to $6,300.90. The arbitrator ordered Great West to pay this amount to the Kronings.

Great West moved to vacate the arbitrator's award, asserting the arbitrator exceeded his powers by ordering payment, and the services rendered by Theogene Kroning were not compensable under the no-fault act. The Kronings moved to confirm the arbitrator's award.

The district court denied both motions. Although the court found the services were not compensable under the no-fault act, it concluded the arbitrator's determination of the value of those services was correct. The

Kronings appeal, and Great West has filed a notice of review.

## ISSUES

1. Are in-home nursing services provided by the spouse of an injured insured compensable under the no-fault act when the insured is not obligated to pay for those nursing services?

2. Did the district court err in refusing to vacate the arbitrator's award?

## ANALYSIS

The district court's grant of summary judgment was based on its determination that the nursing services rendered by Theogene Kroning to Ronald Kroning were not compensable under the no-fault act. Statutory interpretation presents a question of law that this court reviews de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

### I. *Compensability*

Every policy of automobile insurance that affords no-fault benefits must include medical expense benefits, which

> shall *reimburse* all reasonable expenses for necessary medical, surgical, x-ray, optical, dental, chiropractic, and rehabilitative services, including prosthetic devices, prescription drugs, necessary ambulance and all other reasonable transportation expenses incurred in traveling to receive covered medical benefits, extended care and nursing services.

Minn.Stat. § 65B.44, subd. 2 (1992) (emphasis added).

The language of section 65B.44, subd. 2 speaks of reimbursement of reasonable expenses. The statute does not require insurers to pay for the reasonable value of services rendered; it requires reimbursement of expenses for such services. There cannot be reimbursement for value or services; there must be an out-of-pocket expense to qualify for reimbursement. This focus on actual economic loss emphasizes the purpose and nature of no-fault benefits as compensation for immediate economic detriment. *See* Minn.Stat. § 65B.42(1) (1992) (one purpose of no-fault act is to relieve severe economic

distress of uncompensated victims of automobile accidents).

The Minnesota No–Fault Act and the Uniform Motor Vehicle Accident Reparations Act share a common origin. *See* Michael Steenson, *Minnesota No–Fault Automobile Insurance* 7 (1992). The Minnesota Supreme Court has looked to the uniform act in construing Minnesota's act. *See Nadeau v. Austin Mut. Ins. Co.*, 350 N.W.2d 368, 373 (Minn.1984).

The focus of the uniform act is on economic detriment caused by motor vehicle accidents. Uniform Motor Vehicle Accident Reparations Act, § 1 comment, 14 U.L.A. 45 (1990). Consistent with the focus of the uniform act, courts in Minnesota have limited recovery of no-fault benefits to demonstrable economic loss. *See Nadeau*, 350 N.W.2d at 373 (replacement service loss benefits require actual expense for substitute services); *Rotation Engineering & Mfg. v. Secura Ins. Co.*, 497 N.W.2d 292 (Minn.App.1993) (wage loss not compensable in absence of showing of economic loss); *Erickson v. Great American Ins. Cos.*, 466 N.W.2d 430 (Minn.App. 1991) (income loss benefits limited to reduction in insured's gross income).

Minn.Stat. § 65B.44, subd. 5 (1992) requires that an actual expense be incurred for recovery of replacement service loss benefits. *Nadeau*, 350 N.W.2d at 373. As Kronings point out, section 65B.44, subd. 5 includes the word "incurred" in the language at issue in *Nadeau*, while the word does not appear in the language of subdivision 2 at issue here.[1] Nevertheless, we find *Nadeau*'s analysis applies to the present case. Section 65B.44, subd. 2 mandates reimbursement of medical expenses. Just as subdivision 5 requires that loss be "incurred," subdivision 2 requires that a reimbursable expense exist. With one exception,[2] section 65B.44 does not contemplate payment for the value of services; it looks to the reimbursement of ex-

penses. The existence of one exception in the statute argues against judicial creation of others. Minn.Stat. § 645.19 (1992).

The irony of this case is that if Ronald Kroning had gone to a nursing home and received the same care provided by Theogene Kroning, but at greater cost, Great West could not argue that the expenses incurred are not compensable under the no-fault act. If the legislature chooses to amend the statute, in-home nursing care could be made compensable. We, however, must apply the statute as it is written.

## II. *Vacation*

 The district court may vacate an arbitration award when arbitrators exceeded their power. Minn.Stat. § 572.19, subd. 1(3) (1992). The arbitrator's power is determined by the parties' intent. *Woog v. Home Mut. Indemnity Co.*, 340 N.W.2d 863, 865 (Minn. 1983). In the present case, the parties agreed the arbitrator would decide only the necessity and reasonable value of Theogene's services, leaving the question of coverage for the court, consistent with *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn.1988). In automobile insurance disputes, when arbitrators decide an issue of law, they exceed their power, and the district court should vacate the award to the extent it decides an issue of law. *See Safeco Ins. Co. v. Goldenberg*, 435 N.W.2d 616, 620–21 (Minn.App.1989), *pet. for rev. denied* (Minn. Apr. 19, 1989).

 Great West has filed a notice of review challenging the district court's refusal to vacate the arbitrator's award. To the extent that the arbitrator's award determines the value of these services, it was within the arbitrator's powers and should not be disturbed. The arbitrator's award, however, also ordered that Great West pay the value determined. Coverage, a legal issue, is for the court to determine, not the arbitrator.

1. Although the word "incurred" appears in subdivision 2, it refers to transportation expenses, not the nursing services at issue here. The part of subdivision 2 that reads "and all other reasonable transportation expenses incurred in traveling to receive covered medical benefits" was added to subdivision 2 in 1979. 1979 Minn. Laws ch. 221, § 1.

2. Section 65B.44, subd. 5 mandates payment of the reasonable value of services ordinarily provided by a full-time homemaker who is unable to perform these services *or* the expense incurred in obtaining replacement services, whichever is greater.

*Johnson,* 426 N.W.2d at 421. We read the district court's order as limiting the arbitrator's award to a determination of the value of Theogene Kroning's services. The arbitrator's determination of the value of Theogene Kroning's services was within the arbitrator's authority and will stand.

## DECISION

Medical expense benefits are limited to reimbursement of expenses. The district court did not err in upholding the arbitrator's award to the extent it determined the value of Theogene Kroning's services.

**Affirmed.**