## PROGRESSIVE SPECIALTY INSURANCE COMPANY, Petitioner, Appellant,

v.

**Kelly June WIDNESS, By and Through her parent and natural guardian Shelia WIDNESS, Respondent,**

**Adonna Ermal Enyart, by and through her parents and natural guardians, Gordon and Dixie Enyart, et al., Defendants.**

No. C7–00–33.

Supreme Court of Minnesota.

Nov. 21, 2001.

Scott A. Brehm, Scott A. Brehm & Associates, St. Paul, for appellant.

H. Patrick Weir, Jr., Leland F. Hagen, Leland Hagen Law Office, Ltd., Fargo, ND, for respondent.

## OPINION

LANCASTER, Justice.

In this case, we are asked to decide whether the Minnesota No–Fault Automobile Insurance Act requires that an insurer provide residual liability coverage to the child of a named insured when the child is not a named insured and is driving a vehicle not owned by anyone in the named insured's household, with permission of the vehicle owner. We conclude it does not.

On August 8, 1994, an uninsured vehicle owned by Melissa Baardsen was involved in a one-vehicle rollover accident in Dead Lake Township in Otter Tail County. The vehicle was driven with Baardsen's permission by 16–year–old Adonna Enyart. Three passengers, including the respondent, Kelly Widness, were riding in the vehicle. Widness alleged personal injuries as a result of the accident and brought an action against Baardsen and Enyart in district court.

At the time of the accident, Adonna Enyart lived with her mother, Dixie Enyart, who was the sole named insured on an automobile insurance policy with appellant Progressive Specialty Insurance Company (Progressive). The policy provided an opportunity to list "additional drivers" but Adonna, in addition to not being a named insured, was not listed as an additional driver. Progressive denied residual

liability coverage to Adonna for claims arising out of the accident and filed suit in district court, seeking a declaratory judgment that the residual liability coverage under Dixie Enyart's policy did not extend to Adonna while driving Baardsen's vehicle and that Progressive had no duty to defend or indemnify her for any claims arising out of the accident.

The district court denied Progressive's motion for summary judgment, finding that the terms of Progressive's policy with Dixie Enyart conflicted with the No–Fault Act and concluding that the policy, when amended to conform to the statutes,[1] provided nonowned vehicle liability coverage for Adonna requiring Progressive to defend and indemnify her for bodily injury claims arising from the accident. Widness in turn requested summary judgment. In response to Widness's motion, Progressive urged the court to reconsider its previous ruling against Progressive but, in the alternative, acknowledged that summary judgment in favor of Widness was appropriate because there were no factual disputes. Consistent with the findings of fact and conclusions of law contained in its order denying Progressive's motion for summary judgment, the district court granted summary judgment to Widness.

Progressive appealed and the court of appeals affirmed. The court determined that at the time of the accident Adonna was an "insured" under the No–Fault Act and that the No–Fault Act required Progressive to provide residual liability coverage for an insured while using a nonowned car. *Progressive Specialty Ins. Co. v. Widness ex rel. Widness,* 613 N.W.2d 781, 783–84 (Minn.App.2000). We reverse.

■ On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the trial court erred in its application of law. *Interstate Fire & Cas. Co. v. Auto-Owners Ins. Co.,* 433 N.W.2d 82, 84 (Minn. 1988). Because the facts in this case are undisputed, only questions of statutory and contract interpretation remain; these are questions of law subject to de novo review. *Hertz Corp. v. State Farm Mut. Ins. Co.,* 573 N.W.2d 686, 688 (Minn.1998).

■ The court of appeals and district court both assumed that, as written, Dixie Enyart's insurance policy with Progressive did not extend nonowned vehicle liability coverage to Adonna and moved directly to consider Widness's argument that a policy excluding such coverage would run afoul of the No–Fault Act. We first consider whether the policy in fact excludes such coverage. General principles of contract interpretation apply to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). Where the language of the policy is clear and unambiguous, it is given its usual and accepted meaning. *Id.* If it is ambiguous, it will be construed against the insurance company, as drafter of the contract. *See Current Tech. Concepts, Inc. v. Irie Enterprises, Inc.,* 530 N.W.2d 539, 543 (Minn. 1995).

■ Dixie Enyart's policy with Progressive contains a Minnesota Amendatory Endorsement, Part I of which states, with respect to "Liability to Others":

> **We** will pay, on behalf of an insured person, damages, other than punitive damages, for which any **insured person** is legally liable because of **bodily injury** * * * caused by accident and arising out of the ownership, maintenance or use of **your insured car** * * *.
>
> * * * *

---

1. The policy provides that any terms of the policy that conflict with Minnesota statutes "are hereby amended to conform to the statutes."

**Additional Definitions Used in this Part Only**

When used in Part I **"Insured person"** or **"Insured persons"** means:

1. **You** or a **relative** while driving **your insured car.**

2. **You** while driving any private passenger car other than **your insured car.**

3. Any other person driving **your insured car.**

\* \* \* \*

[5.] The following persons not identified by name as an insured while residing in the same household with the **named insured** and provided the following persons are not identified by name in any contract under the No–Fault Automobile Insurance Act:

a. A **spouse.**

b. Other **relatives** of a **named insured.**

c. A **minor** in the custody of a **named insured** or a **relative** residing in the same household with a **named insured.**

Under the policy, "You" is defined to be the policyholder named in the declarations section of the policy, as well as the policyholder's spouse, if living in the same household. The parties agree that the vehicle Adonna Enyart was driving at the time of the accident was not "your insured car" under Dixie Enyart's insurance policy.

Progressive acknowledges that Adonna, as an "insured person," would have liability coverage under her mother's policy if her liability arose out of use of the car for which the policy was written ("your insured car"), but goes on to argue that liability coverage for use of a nonowned vehicle is limited to "[y]ou while driving any private passenger car other than **your insured car,**" where "you" is limited to the named insured and spouse. The contract language in Part I and the definitions applicable to Part I make resident family members "insured" while driving the insured vehicle, but do not cover nonowned vehicles driven by nonspouse family members. We agree with the district court's and the court of appeals' determinations that, unless the No–Fault Act requires it, the language in Dixie Enyart's policy does not include Adonna as an insured.

We turn, then, to the question of whether the Minnesota No Fault Automobile Insurance Act requires that Adonna Enyart receive nonowned vehicle liability coverage under her mother's policy with Progressive. If so, the policy will be amended to conform to the requirements of the statute.

The No–Fault Act requirement for maintenance of residual liability insurance is tied to vehicles; it requires a vehicle owner to maintain liability insurance for that vehicle. The Act requires the "owner of *a motor vehicle* \* \* \* [to] maintain \* \* \* a plan of reparation security \* \* \* insuring against loss resulting from liability imposed \* \* \* for injury \* \* \* sustained by any person arising out of the ownership, maintenance, operation or use of *the vehicle.*" Minn.Stat. § 65B.48, subd. 1 (2000) (emphasis added). The Act further requires insurance contracts to state liability limits for the vehicles required to be insured under the Act. "*Each plan* of reparation security shall also contain stated limits of liability, exclusive of interest and costs, *with respect to each vehicle* for which coverage is thereby granted \* \* \*." Minn.Stat. § 65B.49, subd. 3(1) (2000) (emphasis added).

Respondent argues that residual liability insurance required by the Act is not limited to vehicles that are required to be insured under section 65B.48, subd. 1, but follows family members of the vehicle's owner whenever they drive, regardless of

whether the vehicle they drive is the one for which insurance is required or not. The argument is presented in two stages, which simply stated are: first, that all resident family members are "insured," and second, that all insureds have liability insurance while driving all vehicles, with certain exceptions not relevant here.

■ First then we examine whether Adonna Enyart is an "insured" for purposes of the Act. Here we readily agree with respondent. The Act leaves no doubt as to who is "insured." The definition of "insured" in the No–Fault Act is almost identical to additional definition number five in Part I of the Minnesota Amendatory Endorsement to the policy.

> [T]he named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with [the No–Fault Act] as an insured:
>
> > (1) a spouse,
> >
> > (2) other relative of a named insured or
> >
> > (3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.
>
> A person resides in the same household with the named insured if that person's home is usually in the same family unit * * *.

Minn.Stat. § 65B.43, subd. 5 (2000). At the time of the accident, Adonna Enyart was living with her mother, was not identified by name on any other insurance policy, and she is both a relative of the named insured and a minor in custody of the named insured. Therefore, Adonna is "insured" under the statute.

■ We turn then to stage two of respondent's argument, which focuses on Minn.Stat. § 65B.49, subd. 3(2) (2000). There, the Act requires a residual liability insurer to "pay, on behalf of the insured, sums which the insured is legally obligated to pay as damages because of bodily injury * * * arising out of the ownership, maintenance or use of a motor vehicle * * *."

Respondent urges us to conclude that the language of subdivision 3(2), "a motor vehicle," is clear and unambiguous, and means *any* motor vehicle (being driven with the owner's permission). This is essentially what the court of appeals held; that Enyart is an "insured" under the Act, she was driving "a" motor vehicle, and the Act requires Progressive to insure against any residual liability she might incur while driving whether or not the vehicle she is driving is insured under the policy.

We are not persuaded that the statute is clear and unambiguous in this regard. The statute uses the term "a" motor vehicle rather than, for example, "any" motor vehicle, or similar language that signals an intentional broadening, through subdivision 3(2), of the coverage mandated in other subdivisions of the statute. Subdivision 3(2) is part of the No–Fault Act and we read it in conjunction with the Act as a whole. *See Anderson v. Comm'r of Taxation,* 253 Minn. 528, 533, 93 N.W.2d 523, 528 (1958).

The provisions in the Act that mandate residual liability coverage, sections 65B.48, subd. 1, and 65B.49, subd. 3(1), expressly reference coverage in terms of the vehicle rather than the driver. Section 65B.48, subd. 1, provides that the owner of a motor vehicle must maintain liability insurance for injury from operation of "the" motor vehicle. Section 65B.49, subd. 3(1), specifies the minimum limits for the mandated residual liability coverage that must be maintained "with respect to each vehicle."

The emphasis in these subdivisions on residual liability insurance attaching to the insured vehicle is consistent with our prior observation that unlike first-party coverage that follows the person, liability coverage follows the vehicle. *Lobeck*, 582 N.W.2d at 250; *Hilden v. Iowa Nat. Mut. Ins. Co.*, 365 N.W.2d 765, 769 (Minn.1985). It is unlikely that section 65B.49, subd. 3(2), was intended to change this focus without doing so more definitively.

■ The language in subdivision 3(2) that is the crux of respondent's argument, "arising out of the maintenance or use of a motor vehicle," is also used in other parts of the No–Fault Act to define the circumstances when the mandated first-party coverage, basic economic loss benefits, are available—that is, when injuries or damages arise from the use of a motor vehicle as opposed to non-vehicle-related activities (or from motorcycle activity since a motorcycle is not a motor vehicle under the Act). *See* Minn.Stat. § 65B.46, subds. 1, 2 (2000). It is more likely that when the same phrase was used in section 65B.49, subd. 3(2), it was to prescribe the same condition on residual liability coverage—that is, injuries must be motor vehicle related—rather than to contradict the prior provisions that connect this third-party coverage to the insured vehicle. We conclude that the mandatory aspect of residual liability insurance is coverage for the insured vehicle, so that if the insured vehicle is the at-fault vehicle in an accident, there will be liability coverage.

This view is consistent with the historical development of third-party liability concepts in Minnesota. In 1974 in connection with enacting the No–Fault Act, the legislature repealed much of the previous automobile insurance legislation, which was codified under the Safety Responsibility Act. *See* Act of April 11, 1974, ch. 408, § 33, 1974 Minn. Laws 762, 786; Minn. Stat. ch. 170 (1974).

Relevant to the issue here of liability coverage for permissive drivers of others' vehicles is a section of the Safety Responsibility Act that remains in effect today. Minnesota Statutes § 170.54 (2000) provides that "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

A related section of the Safety Responsibility Act that did not survive the enactment of the no-fault legislation provided that the owner's liability insurance policy would "insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles." Minn.Stat. § 170.40, subd. 2(2) (1971). Thus the emphasis in the Safety Responsibility Act was on making sure that there would be coverage when the vehicle was the at-fault vehicle, even if the owner or named insured was not the driver. The focus was not on assuring that all permissive drivers had their own portable liability coverage.

After the No–Fault Act, the Safety Responsibility Act provision remains that makes permissive drivers the agents of the vehicle owners. Minn.Stat. § 170.54. The section in the Safety Responsibility Act requiring liability coverage for permissive drivers was repealed, but it is likely due to the fact that the same coverage was provided by the No–Fault Act's residual liability requirement. That is, residual liability

must cover the vehicle even if a permissive driver is at fault. *See* 1 Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* 185 (2d ed. 1999) ("The consent provision of the [S]afety [R]esponsibility [A]ct was retained when the [N]o-[F]ault [A]ct was passed. In spite of the omission of language similar to section 170.40, it seems clear that the mandated [residual liability] coverage is the same as under prior law.").

This reading, that permissive drivers are covered under the insurance of the vehicle they are driving, is consistent with our observation in *Toomey v. Krone,* 306 N.W.2d 549, 550 (Minn.1981), that the No–Fault Act did not alter the basic framework of liability law. The No–Fault and Safety Responsibility Acts taken together provide the legal requirements for coverage of a vehicle such as that being driven by Enyart in this case.

Further, we have upheld exclusions that are inconsistent with respondent's broad reading of subdivision 3(2). In *Toomey,* we upheld the validity of a policy that excluded liability coverage for a named insured's resident relatives when driving vehicles owned by the relatives but not listed in the policy. 306 N.W.2d at 550. More recently in *Lobeck,* we upheld the validity of an automobile insurance policy provision that excluded coverage for an insured where the insured's liability to a third party arises while the insured is driving a vehicle without permission. 582 N.W.2d at 250. If the No–Fault Act, and subdivision 3(2) in particular, requires provision of residual liability coverage for all "insureds" when driving "any" vehicle, these exclusions would not have been valid.

■ Our precedent as stated in *Toomey* and *Lobeck* is also significant in that we emphasized what we reiterate today, that liability coverage differs from first-party coverage under the No–Fault Act and is coverage that follows the vehicle rather than the person. The reading of section 65B.49, subd. 3(2), that is urged upon us by respondent Widness would untether liability insurance from the vehicle and make it dependent upon where the driver of an uninsured vehicle happens to live. That sort of inquiry into the residence of a person driving a vehicle in order to determine whether there is liability coverage would represent a dramatic departure from our prior reading of the No Fault Act and the distinctions that we have made between first-party and third-party coverage under the Act.

Respondent's reliance on the language "a motor vehicle" in the statute would be a slim reed upon which to rest a dramatic departure from settled no-fault first-party and third-party liability coverage law. For one thing, the language appears in a subdivision following a paragraph defining what vehicles must be covered by insurance and, second, had the legislature meant that single phrase to be as encompassing as respondent urges us to read it, the legislature could easily have said "any motor vehicle" rather than "a motor vehicle." Because the legislature did use the phrase "a motor vehicle" and because there is nothing else in the No–Fault Act, the Safety Responsibility Act, or in our prior case law to indicate that liability coverage must extend to the same persons and under the same circumstances as first-party liability coverage, we reverse the court of appeals.

Reversed.

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion. The majority's holding will deny coverage to all parents who have purchased no-fault insurance to provide coverage for their minor children of driving age living in their households in case of an

accident while the "insured" minor is driving another's car with the permission of the owner of that car. The majority has "no doubt" that Adonna Enyart is an "insured" under the No–Fault Act. Despite this recognition, the majority denies coverage even though none of the exclusions in Progressive's policy are applicable to the facts of this case. Furthermore, the majority mistakenly fails to recognize the differences between Minn.Stat. § 65B.48, subd. 1 (requiring that every vehicle owner maintain a plan of reparation security) and Minn.Stat. § 65B.49, subd. 3 (addressing the requirements of each plan of reparation). In doing so, the majority fails to recognize that the No–Fault Act unambiguously states that a residual liability insurer is legally obligated to pay under the circumstances of this case.

The majority begins its decision by mischaracterizing the district court's decision. The majority states that it agrees with the district court that unless the No–Fault Act requires it, the language in Dixie Enyart's policy does not include Adonna as an insured. In fact, the district court concluded that Progressive's policy did provide nonowned vehicle coverage for Adonna Enyart's use under these facts and that there were no applicable exclusions relating to bodily injury claims and, therefore, Progressive has a duty to defend and indemnify the bodily injury claims arising out of this accident. The district court found a conflict between the definition of "you" and "your" on the declaration page of the policy with the definition of "insured" as defined in the Minnesota No–Fault Automobile Insurance Act. The court of appeals held that Progressive's provisions on limitation of liability under these circumstances violated the minimum coverage required under the No–Fault Act and were therefore void.

The majority's decision erroneously interprets ambiguous and sometimes conflicting language within the 27 page no-fault policy in favor of the insurer. In addition, the majority's decision is contrary to the scope and purpose of the No–Fault Act. In support of its decision, the majority cites cases involving policy exclusions (*Lobeck* (excluding liability coverage for driving without permission) and *Toomey* (excluding liability coverage for insured's relatives if they owned their own vehicles)) and then adds an exclusion to Progressive's policy for a resident relative driving a nonowned vehicle. The majority's conclusion is ironic because exclusion No. 10 within Progressive's policy only excludes liability coverage for:

> Bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or a relative.[1]

There is nothing in the record indicating that Adonna Enyart either owned the vehicle involved in the accident or that it was furnished or available to her for regular use. Accordingly, this policy exclusion does not apply to Adonna Enyart. Adonna Enyart's use of an acquaintance's vehicle was not excluded from coverage and was a risk that appears to be directly contemplated in the policy because this case involved a permissive short-term or one-time use of another's vehicle.

In denying coverage, Progressive argues that Adonna Enyart, age 16, was not an "insured person" in this case because the car she was driving was not the "insured car" under her mother's policy. However, the way the policy provisions are written, it is unclear what Progressive is trying to accomplish with respect to

---

1. The effect of this provision is ignored by the    majority.

certain areas of coverage. For example, the policy definition of "insured person" as it relates to liability to others includes "a minor in the custody of a named insured." In an amendment to Part 1 of the policy where liability to others is covered, the policy states that "[it] will pay, on behalf of an insured person, damages * * * for which any insured person is legally liable because of bodily injury and property damage caused by accident and arising out of the * * * use of your insured car * * *." The policy definition of "your insured car" includes four sub-parts, one of which states "any car * * * not owned by you while being driven temporarily as a substitute for any other vehicle described in this definition, because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction." If these definitions of "insured person," and "your insured car" were inserted into the amendment to Part 1 of the policy where liability to others is covered, it would read:

> We will pay, on behalf of Adonna Enyart, damages for which Adonna Enyart is legally liable because of bodily injury and property damage caused by accident and arising out of the use of *any car not owned by Dixie Enyart while being driven temporarily as a substitute for any other insured car because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction.*

Therefore, Progressive would have been obligated to provide coverage in this case if Adonna Enyart had been temporarily using any vehicle, including Baardsen's vehicle, as a substitute for any "insured car" under the policy because of that insured car's breakdown, repair, servicing, loss or destruction. This cuts against the majority's conclusion that "[t]he contract language in Part I and the definitions applicable to Part I * * * do not cover nonowned vehicles driven by nonspouse family members."

For a parent trying to read these policy provisions and determine whether their child will be covered, the policy is at a minimum ambiguous. Most people would assume Progressive's policy would cover their children while driving motor vehicles with permission because the policy states that "insured" includes "a minor in the custody of a named insured * * *." Furthermore, as illustrated above, the policy clearly provides coverage in certain circumstances where a policyholder's minor child drives a nonowned vehicle. The majority states, however, that the policyholder must also read the definitions in conjunction with the rest of the policy, and when that is done, it is clear that the minor is only insured while driving a named policyholder's insured car and not while driving another's car with permission. Under the majority's interpretation, this policy's no-fault coverage would differ within the family unit depending on which vehicle is being driven. The majority comes to this conclusion by discussing insured vehicles in terms of the intricate differences between the terms "a motor vehicle" and "each motor vehicle" contained in the No–Fault Act while ignoring the common sense interpretation and the policy definitions of "insured person" and "your insured car." Even when the definitions are read in conjunction with the rest of the policy, its provisions are ambiguous at best.

"Ambiguous terms in an insurance policy are to be resolved against the insurer and in accordance with the reasonable expectations of the insured." *Minnesota Mining and Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn.1990); *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 ·(Minn.1979). Based on the definition of "insured," it is

reasonable for Dixie Enyart to expect that her 16–year–old daughter living with her and in her custody would be covered under her policy if she is involved in an accident while driving another's car that is not furnished for regular use and is used with the owner's permission. The policy plainly states that, as a minor in Dixie Enyart's household, Adonna Enyart is included as an insured. In addition, the policy clearly provides coverage for an insured while driving *any* vehicle not owned by the policyholder if that vehicle is being borrowed temporarily as a substitute for any insured vehicle because of the insured vehicle's breakdown, repair, or servicing. Progressive should not be allowed to exclude Adonna Enyart from coverage simply because her mother's car was not being repaired at the time Adonna used Baardsen's car.

The policy only attempts to exclude coverage as follows: "no person shall be considered an insured person if the person drives a vehicle without the owner's expressed permission." The policy further provides "this provision, though, does not apply to the named insured or to those persons identified in additional definition 5 above." Based on the second sentence in the exception to the definition of insured person, a minor in the custody of the insured is still considered an insured, even when they drive a vehicle without the owner's expressed permission. This could easily lead one to believe that a child is included as an insured even when they are driving another's car without permission, which would in turn lead one to believe that her child is certainly covered when driving another's vehicle with permission, as was the case here.

There is also nothing in the record that supports the proposition that Adonna En-

yart was an unknown driver to Progressive.[2] While it is true that she was not listed, Progressive does not offer any proof that they did not know that she was a driver within this family. Moreover, the policy provides that "[h]igher premiums are charged for drivers based upon the number of penalty points accumulated * * *." It further provides in the "chargeable accidents" sections that "[p]oints are assigned for each accident that occurred during the experience period involving the applicant or anyone else who usually operates the motor vehicle. **Points are assigned regardless of which vehicle is being driven at the time of the accident.**" (Emphasis in policy.) Accordingly, premium adjustments focus on the driver, not the applicant, and regardless of the vehicle.

Even if one accepts the majority's conclusion that Progressive's policy did not provide coverage for Adonna Enyart in this case, the majority also ignores the plain language of the No–Fault Act. Under the No–Fault Act, Progressive is liable to pay, on behalf of Adonna Enyart, damages recoverable by Widness arising out of Adonna Enyart's use of *a motor vehicle. See* Minn.Stat. § 65B.49, subd. 3(2). Despite this clear language, the majority engages in a lengthy discussion of other provisions of the No–Fault Act and concludes that the statute is not clear and unambiguous.

When the language of a statute is plain and unambiguous, it manifests the legislative intent and we must give the statute its plain meaning. *Kersten v. Minnesota Mut. Life Ins. Co.,* 608 N.W.2d 869, 874–75 (Minn.2000). This court has held that words and phrases are to be construed "according to rules of grammar and ac-

---

2. The only evidence in the record is answers to requests for admissions admitting that

Adonna Enyart was not listed as a named insured or as an additional driver.

cording to their most natural and obvious usage * * *." *Amaral v. Saint Cloud Hospital,* 598 N.W.2d 379, 384 (Minn. 1999).

As the majority points out, the No–Fault Act requires every "owner of a motor vehicle * * * [to] maintain * * * a plan of reparation security * * * insuring against loss resulting from liability imposed * * * for injury * * * sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle." Minn. Stat. § 65B.48, subd. 1. The majority then uses the language from section 65B.48, subd. 1, to define the scope of a plan of reparation security. This is improper because according to the No–Fault Act a "[p]lan of reparation security" is defined as "a contract * * * under which there is an obligation to pay the benefits described in section 65B.49." Minn.Stat. § 65B.43, subd. 15. Therefore, section 65B.49 defines the scope of the No–Fault Act's residual liability insurance coverage. As discussed above, section 65B.49, subd. 3(2), unambiguously requires an insurer to insure against any residual liability an insured incurs as a result of the "maintenance or use of a motor vehicle." This provision should be given its plain meaning—the same meaning as this court has given to the phrase "maintenance or use of a motor vehicle" when considering its usage in section 65B.44—"for an injury to arise out of the use of a motor vehicle, there must exist a causal connection between the injury and the use of an automobile for transportation purposes."[3] *Nadeau v. Austin Mut. Ins. Co.,* 350 N.W.2d 368, 370 (Minn.1984) (citations omitted). Widness's injuries are causally connected to Adonna Enyart's use of an automobile and Progressive should be required to pay Widness's damages on behalf of Enyart.

The majority also attempts to minimize the scope of the phrase "use of a motor vehicle" contained in section 65B.49, subd. 3(2), by referencing section 65B.49, subd. 3(1). The majority claims that subdivision 3(1) "specifies the minimum limits for the mandated residual liability coverage that must be maintained 'with respect to each vehicle,'" and that the emphasis of this provision is that residual liability insurance should only attach to the insured vehicle. The majority takes this phrase out of context and in doing so misinterprets the subdivision as a whole. Section 65B.49, subd. 3(1), requires that "each plan of reparation security shall also contain stated limits of liability * * * with respect to each vehicle for which coverage is thereby granted * * *." This implies that each plan of reparation security may contain coverage for more than one vehicle and that the limits of liability must be stated with respect to each vehicle for which coverage is granted under the plan of reparation security. This reading of section 65B.49, subd. 3(1), rather than the majority's reading, is consistent with section 65B.49, subd. 3(2), which indicates that residual liability insurance extends to circumstances involving "the use of *a* motor vehicle" and not just circumstances where there is the "use of *the* motor vehicle."

The majority opinion also interprets the threshold requirement that all vehicle owners have insurance as meaning other family members driving nonowned vehicles on

---

**3.** Section 65B.49, subd. 2, states that "[e]ach plan of reparation security shall provide for payment of basic economic loss benefits." Basic economic loss benefits are recoverable where an injury arises out of the maintenance or use of a motor vehicle and all this requires is a causal connection between the injury and the use of an automobile for transportation purposes. *Nadeau,* 350 N.W.2d at 370. Therefore, it does not make sense to interpret "maintenance or use of a motor vehicle" to mean one thing under section 65B.49, subd. 2, and mean something different under section 65B.49, subd. 3.

occasion are not required to have insurance. The No–Fault Act requires every owner of a registered motor vehicle in Minnesota to purchase reparation security. Minn.Stat. § 65B.48, subd. 1. Under the majority's reading of the statute, a minor who is a licensed and an authorized driver but does not own a vehicle, as is the case here, is not required to have such coverage. The only way a minor that does not own a vehicle would have reparation security is if she is covered through her parents' policy. The fact that the legislature intended this coverage for minors within family policies is evidenced by the No–Fault Act's definition of "insured." The No–Fault Act defines a minor driver under the facts presented here as an insured under the family's policy. While the majority attempts to analogize this case to *Toomey* and *Lobeck*, these cases are distinguishable in that they involved policy exclusions related to facts not present in this case. There simply are no statutory or policy exclusions that apply to the facts presented in this case.

Both the insurance policy issued by Progressive in this case and the majority opinion create great uncertainty for families with minors and open up a significant gap in our No–Fault Act coverage. Resolving the ambiguity in Progressive's policy in favor of Adonna Enyart in accordance with the reasonable expectations of the named insured requires the court to find that the policy provides coverage for damages arising out of Adonna Enyart's use of Baardsen's car. The majority holds the statute was not "clear and unambiguous," but they ignore the conflicting and ambiguous language within the policy. Furthermore, the No–Fault Act unambiguously provides coverage for Adonna Enyart based on the facts of this case.

I would affirm the court of appeals.

PAGE, Justice (dissenting).

I join in the dissent of Justice Gilbert.